S. H. AYRES, EX'R., v. PHEBE M. HULL.

*Error from Johnson County.*

CONTRACTS: IMPLIED.—Where a sister resides in the family of her brother, performing the ordinary services of a housekeeper and receiving clothing and the benefits of a home for nearly eight years, without keeping any account, and without any promise or contract or understanding that she should receive wages, the law will not imply a contract for services rendered, nor hold the brother's estate chargeable with a claim made for such services for the first time after the death of the brother.

The facts of the case sufficiently appear in the subjoined opinion of the court.

*A. Smith Devenney,* for plaintiff in error.

*No counsel* for defense.

*Devenney* submitted:

1. The evidence discloses that the intestate and defendant in error were brother and sister, and that defendant in error resided with the intestate, as a member of his family, or made intestate's house her home, and performed services therein, and therefor, without any express contract, promise or understanding, on the part of the intestate, to pay her for her services. We maintain she was not entitled to recover for such services, because, in such cases, the law does not raise an implied contract or promise to pay. 1 *Pars. Contr.,* 531, 538; *Cauble v. Ryman,* 26 *Ind.,* 207; *King, Adm'r, v. Kelly,* 28 *Ind.,* 89; 9 *C. and P.,* 87; 6 *Ind.,* 60; 3 *Ben. Munroe,* [*Ky.,*] 645; 12 *Barb.,* 477; 2 *Denio,* 149; 5 *Cow.,* 531; 3 *Comst.,* 312, 318; 13 *Pick.,* 1; 5 *Barb.,* 122, 125; 8 *Cow.,* 84; 17 *Vt.,* 556; 16 *id.,* 150; 5 *Watts & Serg.,* 357, 513; 4 *C. & P.,* 93; 2 *Brad.,* [*N. Y. Sur.,*] 336; 19 *Mo.,* 433; 22 *id.,* 439.

2. A contract, or promise to pay, as a matter of fact, requires affirmative proof to establish it. Under certain circumstances, when one person labors for another, a presumption of fact will arise that the person for whom he or she labors is to pay the value of his or her services. It is a conclusion to which the mind readily comes, from a knowledge of the circumstances of the peculiar case, and the ordinary dealings between man and man. But where the services are rendered between members of the same family, no such presumption will arise. We find other motives than the mere desire of gain, which may prompt the exchange of mutual benefits between them; and hence no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous, as upon the absence of any contract, or promise, that a reward should be paid.

The policy of the law seems to be to encourage and protect the relation existing between members of the same family, by blood or marriage, to encourage an extension of the circle and influence of the domestic fireside. And, unless compelled by some rigid rule of law, the courts ought not to establish a rule calculated to sever or contract the family circle and influence of the domestic fireside.

*By the Court,* KINGMAN, C. J.

The record in this case shows that the defendant in error, a woman of mature age, lived in, and formed part of the household of her brother for several years before his death, performing the labor usually appertaining to

a housekeeper having a family in charge, and discharging such duties with prudence, industry and skill. After the death of her brother she presents a claim against his estate for those services, amounting to fifteen hundred and eighty dollars; the time charged for, being from the 13th day of March, 1861, to the 4th day of November, 1868. The probate court allowed her, on this claim, five hundred and forty-four dollars. An appeal was had to the district court. That court, after a hearing, gave her a judgment for one hundred and fifty dollars, from which judgment the executor of the decedant's will brings the case to this court for review.

The record contains all the evidence, and fairly raises the question: Whether, under the circumstances of this case, the law will imply a promise to pay for such services. There is no evidence, whatever, tending to show that there had been any contract between the parties, or any promise to pay the defendant in error for the labor that she performed. The judgment of the court below must stand on the implied assumpsit which the law raises in similar cases between strangers, or it must be reversed.

CONTRACTS: IM-It may be stated as a general principle of plied: Exceptions. almost universal application, that when one person does work for another, with the knowledge and approbation of that other, the law will imply a promise on the part of the person benefitted thereby, to make a reasonable compensation therefor. But, if the relation of the parties is such as to show some other inducement than a pecuniary one for the labor, then the law will not imply a promise to pay for such services. As where a daughter remains in the family of her father after her majority, performing her share of the ordinary labors of the household and receives in return her maintenance, and the comfort and protection of the family relations,

she will, in the absence of proof of some other understanding, be presumed to have done the work gratuitously, and without the expectation of pecuniary reward. So, in the case of Guenther v. Birkicht's administrator, [22 *Mo.*, 439,] it was held that, "where a step-son continues to reside in the family of his step-father, after coming of age, as before, the law will not imply a contract for services rendered."

The case of Robinson v. Cushman [2 *Denio*, 149] is, in many respects, similar to the case before us. In that case the intestate had taken a widowed sister into his household and made his house her home. She remained with her brother till his death, nearly fourteen years, being provided for by him, and in return rendering herself useful in the family by such services as are commonly performed by a house-keeper. Such was the value of her services, and so strong was the impression of their worth upon the mind of her brother, that eleven years after the sister came to his house, he executed a sealed note promising to pay her two thousand dollars, "justly and truly due her for services rendered him during his illness." The note was not delivered, but was placed in a sealed envelope marked "private," and deposited in his iron chest, where it was found after his death. The evidence showed, satisfactorily, that the brother fixed the value of the services rendered by his sister at two thousand dollars, and that amount was found due her by the referee. He also found from the evidence, that she rendered the services, and herself and daughter were provided for without any supposition, on the part of either, that an account was to be kept or any charge made by either against the other. Upon this state of facts the court held that the sister could not recover, saying that the parties were brought together

and made useful to each other by the bond of love, and by that alone. That during the fourteen years neither party had thought of such a thing as a contract of hiring; or that a legal obligation existed or was springing up between them. It will be observed that there was in that case one fact, not in this. There was the written admission in the undelivered note that there was a balance due the sister, of two thousand dollars, in the judgment of the brother. But the court held, as it was never delivered, it constituted no legal obligation to pay, and was of slight value as evidence of a contract, if it was to be considered at all. The main point settled was, that the sister, under the circumstances, had no legal claim whatever upon the estate of her brother. *See, also,* 26 *Ind.,* 207; 28 *id.,* 89; 3 *Ben. Munroe,* 645.

In the case of Williams v. Hutchinson, [5 *Barb.,* 128,] the court held that a step-son, whose services while in the family of his step-father exceeded the value of his board, clothing, etc., in the sum of eighty-one dollars, was not entitled to recover, although it was admitted that the relation of the parents created no obligation on the part of the step-father to support the step-son, nor any right to his services. The principles on which the case was settled were similar to those involved in the present case. The decision was afterwards affirmed in the court of appeals. 3 *N. Y.,* 312.

In delivering the opinion, JOHNSON, J., says: "The books are full of cases to show that under such circumstances the law will not imply a promise to pay for services thus rendered, or permit a recovery unless an express promise is shown, or something to prove that such was the expectation on both sides."

In the case before us there is not one word of testimony tending, in the slightest degree, to show either an

express promise to pay, or a specific contract, or that there was any understanding that the decedent was to pay for the services rendered, or that the relation of debtor and creditor was growing up between the parties.

For nearly eight years the defendant in error lived in the house and formed part of the household of the brother, rendering services, abundantly proven to have been valuable, and receiving in return but a scanty supply of clothing, a living and a home. Had there really existed any contract, or promise, or understanding, between the parties, we would not disturb the judgment; for, if the defendant in error was entitled to anything in law, she ought to have all that was adjudged her.

But it would be an infringement of a principle long established and founded on a wise and beneficent policy, were we to hold the claim valid in law. So many considerations, other than those of a mere pecuniary character, enter into the minds of persons closely related in making up the family, that it would be both violent and dangerous to infer a promise from the kindly and sociable acts growing out of such relations. The family relations are too sacred to be invaded and disturbed by presumptions of law that are reasonable and proper when applied to the acts of strangers. In this case the claimant had her home and her expectations for the future, and might well have anticipated a continuance of the same during her life, or if her brother were to die, he would make suitable provision for her. If she has been disappointed in such reasonable expectations, that forms no grounds for an action at law. If her services were worth more than her board and clothing, still she had with her brother a home with all its hallowed associations, and in - estimable benefits for the present, and possible expectations of other advantages in the future. She kept no

accounts, and nothing like wages were paid her for nearly eight years. It must be presumed, till the contrary is made to appear, that the idea of wages formed no part of her inducement to remain, and of course, no basis on which a promise, in law, can be established.

The principle of law claimed by the plaintiff in error in the court below, though as applicable to the facts in this case, true enough, is. broader than we choose to admit as a rule of general application. We decide the case on the record. The whole evidence is there, and no testimony from which any promise could be inferred; or that any agreement or understanding existed between the parties, that the defendant in error was to receive wages. We are, therefore, constrained to reverse the judgment, with directions to proceed in this case according to the views indicated in this opinion.

All the justices concurring.