·JOHN F. ENSEY, *Executor of the Estate of Matthew Ensey, Deceased*, v. MAZEPPA ESTELLA HINES.

STEP-GRANDDAUGHTER; *Recovery for Services to Step-Grandfather.* Where a step-granddaughter, after her marriage, remains in the family of her step-grandfather as before, performing her share of the ordinary labors of the household, and receives in return her maintenance and the comfort and protection of the family, the law will not imply a contract for services rendered. (*Ayres v. Hull*, 5 Kas. 419.) But where the step-granddaughter marries, and no longer continues to live as a member of the family of the step-grandfather, and the latter boards with her and her husband for several years, and during all this time she does the washing, ironing and mending of clothes for the step-grandfather, and nurses, waits upon and takes care of him, upon an understanding between them that she is to have a reasonable compensation for such services, *held*, that in an action instituted therefor, she is entitled to recover for her services.

*Error from Johnson District Court.*

AT the November Term, 1882, plaintiff *Hines* recovered a judgment for $250 against *Ensey*, as executor, etc., who brings it here for reversal. The facts appear in the opinion.

*E. B. Gill*, for plaintiff in error.

*Burris & Little*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are substantially these: Mazeppa E. Hines presented a claim against the estate of Matthew Ensey, deceased, for washing, ironing, making and mending clothes for said Matthew Ensey, and for nursing, waiting upon and taking care of him from September 13, 1877, until September 19, 1881, amounting to $416. After a hearing upon the claim in the probate court, an appeal was taken to the district court. That court gave her judgment for $250, from which judgment the executor of the decedent's will brings the case to this court.

Upon the trial, it was established that the grandmother of Mrs. Hines married Matthew Ensey in December, 1874;

that at that time Mrs. Hines was fifteen years old only; that her mother died when she was nine months old; that prior to this marriage she had made her home with her grandmother; that after her grandmother's marriage with Mr. Ensey she made her home with Mr. and Mrs. Ensey; that at the time of Ensey's marriage he was about sixty years of age, and most of the time after his marriage he was partially helpless from the result of paralysis; that Mrs. Ensey, the grandmother, died in July, 1877; that in September following, Mrs. Hines married Theodore Hines her present husband; that Mr. Ensey died on the 19th of September, 1881. In addition to these facts, on the part of Mrs. Hines, evidence was offered tending to prove that she and her husband lived on Mr. Ensey's farm after her marriage up to the time of Mr. Ensey's death; that Mr. Hines worked the farm, and that Mr. Ensey boarded with them; that while Mr. Ensey lived with them he was not at all times able to wait upon himself, and Mrs. Hines washed his face and body, put on his clothes, and helped him at the table, cutting his meat, and pouring out his coffee, and also mended his clothes, did his washing, and performed other services for him set forth in her account; that Mr. Ensey frequently said, while living with Hines and his wife, that "May [meaning Mrs. Hines] was just as good as she could be, and he intended to reward her well for it;" that he said, in December, 1880, that "Mrs. Hines took good care of him, and he calculated to pay her well for it."

On the part of the executor, evidence was offered tending to show that Mrs. Hines had no contract with the decedent; that she lived with her grandmother and her husband, Mr. Ensey, from the time they were married, as one of the family; that she was furnished with clothing, boarding and lodging as one of the family; that she kept house for Mr. Ensey from the death of her grandmother to the date of her own marriage, and when she was married she and her husband lived at Mr. Ensey's house; that she lived with him after her marriage just as she did before; that she never claimed any pay for the services sued for until this action was brought.

45 — 30 KAS.

In answer to special questions propounded to them, the jury returned the following findings:

"Was there an understanding between Matthew Ensey, deceased, and the plaintiff that said Ensey was to pay a reasonable compensation for the services of plaintiff? A. Yes.

"Was the plaintiff a step-granddaughter of Matthew Ensey, deceased? A. Yes.

"Did the plaintiff live with Matthew Ensey, deceased, as a member of his family, up to the time she married Theodore Hines? A. Yes.

"After the plaintiff married Theodore Hines, did she and her husband move into the house of the decedent and continue to live in his house, using his household and kitchen furniture until his death, as a member of his family? A. Not as a member of his family.

"Was an express contract ever made between the plaintiff and Matthew Ensey that Ensey should pay the plaintiff a stipulated sum of money for waiting upon and taking care of him? A. No.

"If a contract was made between the plaintiff and Matthew Ensey, deceased, what was the price agreed upon between them per day, week, month, or year, for plaintiff's care and attention to the deceased? A. There was no stipulated price agreed upon."

It is contended on the part of the plaintiff in error that this case comes within the doctrine established in *Ayres v. Hull*, 5 Kas. 419, and especially within the authority of *Gunther v. Birkicht*, 22 Mo. 439, and therefore that the verdict of the jury should be set aside. But for the special findings of the jury, we would be compelled to reverse the judgment. If Mrs. Hines, although only a step-granddaughter of the decedent, continued to reside in the home of the decedent after her marriage, as she did before, performing her share of the ordinary labors of the household, and receiving in return her maintenance and the comfort and protection of the family relation, in the absence of proof of some other understanding she must be presumed to have done the services sued for gratuitously and without the expectation of pecuniary reward. Clearly the law would not imply a contract for services so rendered by her. But the findings establish conclusively that

after the marriage of Mrs. Hines, she did not live with the decedent as a member of his family; therefore the jury must have accepted as conclusive the evidence that Hines took charge of the farm of the decedent, and that Mr. Ensey boarded with Hines and his wife after their marriage. Upon the findings, we must assume that Mr. Ensey, under some arrangement which is not fully disclosed, turned his house over to Hines and his wife, and made his home with them. There is not any evidence that after Mrs. Hines's marriage the decedent provided for her, or in any way maintained her. There is some evidence that during the last year of his life he bought for her a sewing machine and a cashmere dress, but he said he bought the dress, not as a present, but because she had doubly earned it.

The instructions given were awkwardly drawn, and in one view, erroneous; but as the jury did not give compensation for the services of Mrs. Hines until after her marriage, and as she did not live, after her marriage, with Mr. Ensey as a member of his family, and as the jury found that there was an understanding between her and Mr. Ensey that the latter was to pay her a reasonable compensation for her services rendered to him, no material error was committed by the charge of the court. The jury founded their verdict upon the fact that Mrs. Hines after her marriage did not remain a member of the family of her step-grandfather.

We have no inclination to change in any respect the law as stated in *Ayres v. Hull,* supra, and *Greenwell v. Greenwell,* 28 Kas. 675; but if Mrs. Hines did not remain in the family of her step-grandfather Matthew Ensey, after her marriage, as a member of his family, and if, under such circumstances, she performed the services set forth in her account upon an understanding between herself and Mr. Ensey, that he was to pay her a reasonable compensation for such services, she was entitled to recover.

The judgment of the district court must therefore be affirmed.

All the Justices concurring.