A. M. STORY, *Administrator, etc.,* v. MARY G. McCORMICK.

No. 13,743.   (78 Pac. 819.)

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Stepdaughter Not Estopped from Claiming Rent.*   In an action brought to charge the estate of a decedent with the payment of rent for the use of a dwelling-house and several acres of productive land that had been occupied by him as a residence, in the absence of any express contract, or any contract implied in fact, the circumstances that the plaintiff, his stepdaughter, lived with him as a member of his family during the time for which rent is asked, and that until the end of the period she made no demand for rent, do not necessarily preclude a recovery; and it is *held,* that, under the facts of this case, it was proper to submit the question of liability to the jury.

2. ——— *Testimony of Plaintiff's Intention Admissible.* In such an action it was not error to permit the plaintiff to testify that she always expected to receive rent for the property.

3. ——— *Instructions Upheld.* Under the evidence in this case it was not error to instruct that a recovery might be had if plaintiff had established by a preponderance of the evidence that defendant's decedent occupied the premises in question with the consent of plaintiff, that there was no agreement as to whether rent should be paid or not, that plaintiff expected to receive rent, and that, in view of the conduct and relations of the parties and the attending circumstances, defendant's decedent did not have good reason to believe that he was not to pay rent.

4. ——— *Limitation of Action.* In an action for the rent of property based wholly upon the *quasi*-contract arising by operation of law from the defendant's occupancy of plaintiff's property, without any express contract, or any contract implied in fact, no recovery can be had based upon such occupancy for any time more than three years prior to the commencement of the action.

Error from Geary district court; OSCAR L. MOORE, judge. Opinion filed December 1, 1904. Reversed.

*John E. Hessin*, for plaintiff in error.

*Robert J. Brock*, for defendant in error.

The opinion of the court was delivered by

MASON, J.: In January, 1892, Mary G. McCormick, fourteen years of age, lived with her mother upon a tract of ground containing eleven acres, which she owned, having inherited it from her father. In that month her mother was married to William Worrell. From the time of the marriage Worrell and his wife lived upon the land referred to, Mary McCormick living with them. This situation continued until a little after April 30, 1901, when Worrell moved from it, Miss McCormick having written him a letter in effect asking payment of rent for the time he had oc-

cupied it. Soon afterward he died, and, an adminis-
trator having been appointed, Miss McCormick filed
a claim against the estate for rent from January,
1892. The claim was allowed by the probate court,
and an appeal was taken to the district court. A
jury trial resulted in a judgment for the claimant in
the sum of $638 for the use of the property from
the time she attained her majority, the court by
its instructions having limited the recovery to that
period. From this judgment the administrator prose-
cutes error.

The principal question presented is whether the evi-
dence in behalf of plaintiff was sufficient to take the
case to the jury. The facts shown, so far as necessary
to the decision of this question, were substantially as
follows : The land was situated about half a mile from
the railroad station of Zeandale. It included alfalfa
ground, pasture, orchard, and garden. The improve-
ments included an eight-room dwelling-house, a barn,
and other outbuildings. The rental value was esti-
mated by the witnesses to be from ten dollars to fourteen
dollars a month. Plaintiff lived with her mother and
stepfather as one of the family during the period in
question, except for about eighteen months, during
which time she was absent at school and on visits.
She paid the taxes, insurance, and cost of painting
and other repairs. She paid no board. She occupied
exclusively one room. She and her mother did all
the housework while she was at home. During sev-
eral years a nephew of Worrell also formed a part of
the family. At one time during plaintiff's minority
two rooms were occupied by a Mr. Coons, and rent
for them was paid to her guardian. Practically, but
not absolutely, all the produce of the place was used
there. Some of it was marketed. Upon one occasion

a small amount of fruit was sold and the money given to plaintiff. Worrell took charge of, and managed, the property. He supplied the table for the family, but contributed nothing to the support or to the expense of plaintiff when she was away from home. A corn-crib on the place was used by him each year for storing alfalfa. Upon one occasion plaintiff wished to use it for some of her own corn, raised elsewhere, but he said that he would rather pay her five dollars than have this done, and did so, continuing to use the crib himself. The stock kept upon the place included two horses belonging to Worrell, one belonging to Mrs. Worrell, and, for a part of the time, one belonging to plaintiff. There was no agreement, oral or written, for the payment of rent, and had never been any talk about it. Plaintiff never made any claim for rent until the writing of the letter already mentioned. She testified, however, that she always expected to receive payment from her stepfather for the use of the property.

Plaintiff's claim for rent is not based upon the theory that there was an understanding between her and the defendant's decedent for its payment—that an implied contract existed that differed from an express contract only in that it required to be proved inferentially by circumstantial evidence instead of directly by positive testimony. She rests her claim upon a *quasi*-contract, or contract implied in law, as distinguished from a contract implied in fact. Her contention is that the law imposed the obligation to pay rent, irrespective of the intentions of her stepfather in the matter. It is said in Keener on *Quasi*-contracts :

"The term 'contract implied in law' is used, however, to denote, not the nature of the evidence by

which the claim of the plaintiff is to be established, but the source of the obligation itself. It is a term used to cover a class of obligations where the law, though the defendant did not intend to assume an obligation, imposes an obligation upon him, notwithstanding the absence of intention on his part, and in many cases in spite of his actual dissent.'' (Page 5. See, also, 15 A. & E. Encycl. of L., 2d ed., 1078.)

It is the contention of the administrator, the plaintiff in error, that the relation of landlord and tenant did not exist, either in virtue of any understanding of the parties, or of an obligation imposed by law ; that the evidence, showing as it does that the plaintiff was a member of the family that occupied the premises, is inconsistent with such a relation. Reliance is placed upon a series of Kansas cases, of which *Ayres v. Hull*, 5 Kan. 419, is the earliest. It was there said :

"It may be stated, as a general principle of almost universal application, that when one person does work for another, with the knowledge and approbation of that other, the law will imply a promise on the part of the person benefited thereby, to make a reasonable compensation therefor. But, if the relation of the parties is such as to show some other inducement than a pecuniary one for the labor, then the law will not imply a promise to pay for such services. . . . So many considerations, other than those of a mere pecuniary character, enter into the minds of persons closely related in making up the family, that it would be both violent and dangerous to infer a promise from the kindly and sociable acts growing out of such relations. The family relations are too sacred to be invaded and disturbed by presumptions of law that are reasonable and proper when applied to the acts of strangers.'' (Pages 421, 424.)

The statute (Gen. Stat. 1901, § 3864) provides that "the occupant without special contract, of any lands, shall be liable for the rent to any person entitled

thereto.'' The evidence is capable of an interpreta-
tion showing such an occupancy of plaintiff's land by
defendant's decedent as to cause him to be liable to
her for rent under the terms of this statute, unless
''the relation of the parties is such as to show some
other inducement than a pecuniary one'' for plaintiff's
permitting its use. Whether such an inducement is
shown in this case is a question of fact. Some por-
tions of the testimony tend strongly to suggest a
purely domestic arrangement between the parties, in
disregard of all business considerations. Other por-
tions have a somewhat contrary tendency. Consid-
ered as a whole, we do not think it necessarily
negatives the idea of a legal obligation on the part of
the defendant to pay rent. The situation is readily
to be distinguished from that arising where, after
some family disagreement, by an obvious afterthought,
a member on the one hand seeks to enforce a charge
for his services, or on the other is sought to be held
liable for the payment of board. There the usual and
natural motives of mutual helpfulness sufficiently ac-
count for the services rendered and benefits received.
But it is neither usual nor natural that a young girl
should, without expectation of compensation, furnish
to her stepfather, in addition to her own labor, a place
of residence, with farm land, orchard and garden that
would go far toward affording support for his entire
family, she herself continuing to bear the whole bur-
den of taxes, insurance, and repairs. If the tract had
been still larger, and had yielded considerable prod-
uce for sale, and the stepfather had received the in-
come derived from that source, it would hardly be
contended that he should not be held for rent, what-
ever use he might have made of the money. Yet the
difference between such a state of facts and that here

presented is one of degree rather than of kind.  The ·question whether under all the circumstances a tenancy existed was rightfully submitted to the jury.

Plaintiff in error cites as a case in point *Collyer v. Collyer*, 113 N. Y. 442, 21 N. E. 114, where a judgment upon an implied contract for rent was reversed. That the facts were not closely similar to those of the case at bar appears from this language of the opinion :

"The plaintiff gave proof, showing, beyond all question, that she (defendant) did not suspect that she was there as his tenant, under obligation to pay rent, and the circumstances were such that he must have known how she understood it."

An Indiana case, *Tinder v. Davis et al.*, 88 Ind. 99, is cited as bearing upon the interpretation of the statute above quoted, which was adopted from that state. But the point decided is merely that the statute does not operate to establish a contractual relation between the owner of land who has leased it by express contract to a tenant, and a member of the family of such tenant.  In volume 1 of Taylor's Landlord and Tenant, ninth edition, section 25, it is said :

"Nor will the relation of landlord and tenant be inferred from occupation, if the relative position of the parties to each other can, under the circumstances of the case, be referred to any other distinct cause." (See, also, *Hardin v. Pulley*, 79 Ala. 381 ; *Curtis v. Hollenbeck*, 92 Ill. App. 34.)

In the present case the question whether the occupancy of the property is capable of being sufficiently accounted for by the relation of the parties is one of fact to be determined by the jury, depending upon the reasonableness of the supposition, under all the circumstances disclosed by the evidence, that plaintiff intended gratuitously to contribute its use to the support of the family.  The case of *Chamberlin v*;

*Donahue*, 44 Vt. 57, well illustrates the principle that, in spite of strong evidence against tenancy, the ultimate decision of the question is for the jury. In *Knox v. Singmaster*, 75 Iowa, 64, 39 N. W. 183, a minor daughter was permitted to maintain an action against her father for the use of a farm which he occupied without any agreement as to rents, during a time while she lived with him upon it, but the questions here involved were not discussed. We think the conclusion we have announced is not out of harmony with the authorities.

It is also assigned as error that the trial court permitted the plaintiff to testify that it was always her intention to make some charge and to receive some rent for the property. Her intention was a material matter in the inquiry. If she had never had any intention of exacting, or expectation of receiving, rent she could not have recovered. The objection made to her testimony in this regard runs rather to its credibility than to its competency, and no sufficient ground is shown for its rejection.

The instructions given are complained of, but upon the same general grounds upon which it is urged that the demurrer to the evidence should have been sustained. The court instructed in substance that the plaintiff, in order to recover, must show that Worrell occupied the premises with the consent of the plaintiff; that there was no agreement as to whether rent should be paid or not; that plaintiff expected to receive rent, and that, in view of the conduct and relations of the parties and the circumstances proved upon the trial, Worrell did not have good reason to believe that he was not to pay rent. In this no error is perceived.

A final assignment of error is based upon the statute

of limitations.   The plaintiff was permitted to recover rent for a period exceeding four years.   It is contended that as the action was upon an implied contract the three-year statute applied, and that no recovery should have been allowed based upon any occupancy of the premises for any time more than three years prior to the commencement of the action.   Against this contention defendant in error invokes the principle that, in the absence of an agreement or custom to the contrary, rent is not due until the end of the term contracted for, and argues that the parties are to be treated as having contracted for the occupancy of the premises for a fixed term—that is, for the full period during which they were actually occupied.   This principle has no application here, for the reason that the law does not imply a contract for the use of the property for a definite term ; it merely imposes a duty to pay for the use of the property for the time it has been occupied.

It is also urged that within the reasoning employed in *Grisham v. Lee*, 61 Kan. 533, 60 Pac. 312, a continuous contract for the hiring of the property should be deemed to have existed, so that the statute would not begin to run against an action for the rent until the occupancy ceased.   In the case referred to an employee was permitted to recover for services extending over a period of some six years, upon the theory that the employment was continuous.   But there an actual contract was made by the agreement of the parties, no time of payment, however, being fixed, and it was properly left to the jury to say whether it was a continuous one.   Here there was no contract but the constructive one resulting from operation of law.   It arose not from an agreement to pay rent for such period as the property might thereafter be occupied, but

from the legal obligation to pay for such benefits as had already been received. Such a contract, or *quasi*-contract, is not prospective in its operation. It does not contemplate a future occupation of the property, and cannot be continuous in the sense in which the term is used in this connection. At any moment an action may be brought upon it for the reasonable value of the enjoyment of the possession of the premises up to that time, and at no time can recovery be had for the use enjoyed more than three years before. The plaintiff's recovery should have been limited to compensation for the use of the property within three years prior to the commencement of the action. (*Seibert v. Baxter*, 36 Kan. 189, 12 Pac. 934; *Tibbetts v. Morris*, 42 Iowa, 120; *Joshua Elder v. G. A. Henry, Adm'r*, 34 Tenn. [2 Sneed] 81; *Carter v. Sanderson*, 41 S. W. [Ky.] 306.)

The judgment is reversed and a new trial ordered.

CUNNINGHAM, GREENE, ATKINSON, JJ., concurring.

JOHNSTON, C. J. (concurring): I concur in the reversal, but dissent from the view that a liability for rent was shown, and also that mere occupation of premises implies a promise to pay rent. The plaintiff, her mother and stepfather constituted a family, and together occupied the premises. There was no agreement that rent should be paid, and none was ever claimed or demanded until the family relation was ended. There was no liability to pay rent unless the relation of landlord and tenant existed. It did not exist unless it was based upon a mutual intention to form that relation, and there must have been an agreement, either express or implied. It will never be implied where the conduct and relations are inconsistent with its existence. Where the family relation

exists, as it did here, it is well settled in Kansas that one member of a family has no right of action against another for wages on one side, nor, on the other side, for board or lodging. Nor is there a right of action for anything furnished by one to the other as a member of the family, unless there is an express contract that such payment is to be made. (*Ayers v. Hull*, 5 Kan. 419; *Greenwell v. Greenwell*, 28 id. 675; *Ensey, Ex'r, v. Hines*, 30 id. 704, 2 Pac. 861; *Shane v. Smith*, 37 id. 55, 14 Pac. 477; *Wyley v. Bull*, 41 id. 206, 20 Pac. 850; *Collyer v. Collyer*, 113 N. Y. 442, 21 N. E. 114; *Tinder v. Davis et al.*, 88 Ind. 99; *Gorrell v. Taylor*, 107 Tenn. 568, 64 S. W. 888; *Fleming v. Hughes*, 6 South. [Miss.] 842; 1 Beach, Cont. 788.) Within the rule of these cases no liability for rent was shown, and the jury should have been so advised.

SMITH, J., concurring in views expressed by JOHNSTON, C. J.

BURCH, J., not sitting, having been of counsel in the subject-matter of the action.