Laymon v. Estate of Henry Francis, 213 Ill. App. 82.

## Julia E. Laymon, Appellee, v. Estate of Henry Francis, Deceased, Appellant.

### Gen. No. 6,585.

1. PARENT AND CHILD, § 34*—*rebuttal of presumption of gratuity of services of member of family.* Where services are rendered by one admitted into the family as a relative, the presumption of law is that such services are gratuitous, and that the parties do not contemplate payment of wages therefor, but this presumption may be overcome by proof.

2. PARENT AND CHILD, § 34*—*what proof sufficient to overcome presumption of gratuity of services of member of family.* The proof necessary to overcome the presumption of gratuity of services rendered by one admitted into the family may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation.

3. PARENT AND CHILD, § 66*—*when evidence as to brother of child stating that parent had sent for her .is admissible.* On a claim by a daughter against the estate of her father for services rendered intestate in his lifetime, evidence that claimant's brother came to her house and told claimant that her father had sent him after her, while not binding .on the estate to prove that deceased did send for claimant, was competent as tending to show what induced claimant to go to. her father's home, and might have some bearing on the question whether she expected compensation or not.

4. PARENT AND CHILD, § 66*—*when evidence that parent supported child previous to her entering his home is admissible in action for services.* On a claim by a daughter against her father's estate for services rendered to intestate in his lifetime, evidence that the father for the period of 10 years immediately preceding the time claimant entered his home had supported claimant and her children on his farm, was competent.

5. PARENT AND CHILD, § 66*—*when evidence as to division of property by parent is admissible in action for services.* On a claim by a daughter against her father's estate for services rendered intestate, evidence that a few years before his death, and during

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Laymon v. Estate of Henry Francis, 213 Ill. App. 82.

the alleged term of service, deceased divided a large sum of money equally among his children, including claimant, was improperly excluded.

6. PARENT AND CHILD, § 68*—*when instruction on right of child to recover for services is erroneous.* On a claim by a daughter against her father's estate for services rendered deceased in his lifetime, instructions that when an adult daughter marries and lives separately from her father, the family relation is dissolved and the presumption arising therefrom no longer exists, and when the daughter returns to her father's home and renders services, she may recover therefor, unless the defense proves that they were rendered as a gratuity, were erroneous.

7. PARENT AND CHILD—*when instruction on bar of claim for services is improper.* On a claim by a daughter against her father's estate for personal services rendered to intestate covering a period of 21 years, an instruction that the claim was barred, except for the period of 5 years preceding the death of intestate, was improper, if the compensation, a home, was not payable until the death of deceased.

8. PARENT AND CHILD—*when presumed that note given to child intended as payment on debt not barring claim.* On a claim by a daughter against her father's estate for personal services rendered intestate during a period of 21 years preceding the latter's death, it must be presumed that a note given claimant within 5 years preceding his death was intended as a payment on his debt for services rendered to him, and hence the statute of limitations was not a bar to the proceedings.

9. FRAUDS, STATUTE OF, § 28*—*what oral promise as to property void under.* An oral promise by a father to give his daughter his home is void under the Statute of Frauds.

10. PARENT AND CHILD, § 66*—*what evidence admissible to show intention to pay for services of child.* Evidence that a father, in his daugher's presence, said that he was going to give her his home for her services as housekeeper and nurse, although relating to a void oral contract, is competent as tending to prove that each party intended that compensation should be paid for the services.

11. PARENT AND CHILD, § 58*—*right of child to recover value of property unconveyed in payment for services.* A daughter who renders services to her father under an oral contract by which the latter agrees to make payment by the conveyance of certain property, is entitled to recover the value of the property from the estate of her father, if such conveyance is not made.

Appeal from the Circuit Court of Livingston county; the Hon.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

G. W. PATTON, Judge, presiding. Heard in this court at the April term, 1918. Reversed and remanded. Opinion filed October 10, 1918.

F. A. ORTMAN and L. M. SHELLY, for appellant.

E. A. SIMMONS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On August 3, 1915, Henry Francis died intestate in Livingston county. Letters of administration were granted to his son, Nelson G. Francis. On February 28, 1916, Julia E. Laymon, his daughter, filed a claim against the estate of said deceased for $5,163, for services as housekeeper and nurse for about 21 years. On a jury trial in the County Court the judge directed a verdict for the estate and disallowed the claim. The claimant appealed to the Circuit Court, where, on a jury trial, claimant had a verdict for $3,328. A motion by the estate for a new trial was denied and claimant had a judgment upon the verdict, to be paid in due course of administration. This is an appeal by the estate. The principles of law applicable to the claim and the defense have many times been announced by the court of this State, and are thus stated in *Heffron v. Brown*, 155 Ill. 322:

"Where services are rendered by one admitted into the family as a relative, the presumption of law is that such services are gratuitous, and that the parties do not contemplate the payment of wages therefor. This presumption, however, may be overcome by proof. The proof necessary to overcome the presumption may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation. (*Miller v. Miller*, 16 Ill. 296.)  *  *  *

But when it is said, that a contract to pay for such services may be implied, something more is meant than the mere promise to pay, which the law implies where one person does work for another with the knowledge and approbation of that other. The implied promise thus raised by the law is rebutted, when there is shown such a relation between the parties as to exclude the inference that they were dealing on the footing of contract. (*Ayres v. Hull* [5 Kan. 419]; 3 Am. & Eng. Encyc. of Law, page 861.) The evidence must show that, when the services were rendered, both parties expected them to be paid for. (*Miller v. Miller, supra; Byers v. Thompson,* 66 Ill. 421; *Fruitt v. Anderson,* 12 Ill. App. 421.) The facts and circumstances must be such as to show that, at the time the services were rendered, the one expected to receive payment and the other to make payment. (*Fruitt v. Anderson, supra.*)'' Claimant introduced proof tending to show that compensation was intended by the parties. The estate introduced evidence tending to show that compensation was not intended by the parties. The proof introduced by claimant tended to show that the claim is meritorious for a large sum. The proof introduced by the estate tended to show that claimant (a widow in destitute circumstances) and her three minor children were furnished a home and supported by the father without any expectation on either side of compensation. As we conclude the case must be tried again, we think it proper not to express any views as to the character and preponderance of the evidence introduced.

Claimant was permitted to prove, over objection, that while she was living on a farm in the country, her brother, Nelson G. Francis, came to her house, told claimant that her father had sent him after her, and carried her to her father's home in Odell, where she entered upon her services for her father. Claimant did not prove that her father in fact sent his son, Nel-

son, to bring her to his home, and Nelson testified for the estate that his father did not give him any directions concerning the moving of claimant from the farm to his home in Odell. The estate insists that this evidence of what Nelson said to claimant was incompetent and should have been excluded. It was not binding on the estate to prove that deceased did send for claimant, but we think it competent as tending to show what induced claimant to go to her father's home, and might have some bearing upon the question whether she expected compensation or not.

We are of opinion that there is no proof in this record which would justify charging this estate for any services claimant rendered to her sister, Emeline, who was ill in their father's home when claimant removed there.

The court refused to admit proof offered by the estate that Henry Francis, the father, for 10 years immediately preceding the time when she came to his house, had supported claimant and her children upon his farm. We conclude this evidence was competent. The jury might therefrom draw some proper inference as to whether the deceased was merely transferring the support of claimant and her family from his farm to his home or whether he intended compensation to her for what she thereafter did in his home.

The court refused to permit proof by the estate that a few years before his death, the deceased divided $7,000 equally among his children, including claimant. This was a financial transaction between deceased and the claimant during the period covered by this claim. We think the evidence should have been admitted. The jury might have drawn therefrom an inference that if he had intended payment to claimant he would have paid her out of that money before making that division, or that at that time he considered her entitled to no more than his other children, unless, indeed, he had promised or intended to pay her by conveying to her the home.

Complaint is made of the rulings of the court on various instructions. They are not numbered in the record, and the numbering in the abstract is therefore incorrect and we can only refer to them generally. In several instructions the question was submitted to the jury whether the claimant returned to her father's home and rendered services to her father "at his request." We do not find any evidence that this was done at his request, and if the evidence is fully abstracted we are of opinion that a special verdict that deceased requested her to return could not be sustained. Nelson was not living at his father's home at the time he carried claimant to his father's house and there was nothing to show that he was ever his father's agent upon any subject. The jury could not be permitted to guess that the father sent for his daughter. He may have done so, but it is quite as reasonable to believe that the adult children, married and living away from home, concluded that since his housekeeper and daughter, Emeline, was afflicted with a fatal malady, it was necessary that some other child should go back to the father's home and act as his housekeeper, and concluded that claimant, a widow with minor children and without resources, was the one who could most readily perform that office. By several instructions the court advised the jury that when an adult daughter marries and lives separately from her father, the family relation is dissolved and the presumption arising therefrom no longer exists, and that when the daughter returns to the father's home and renders services, she may recover therefor, unless the defense proves that they were rendered as a gratuity. We are of opinion that that position is not correct. They are still father and daughter. The family relation still does exist. This principle has been applied to many relations besides that of parent and child. It has been applied where a nephew or a niece goes to the home of an uncle or of an aunt, or a

sister to the home of a brother, and services are rendered by the one or support by the other, and in all such cases the application of the rule above stated has not been defeated by the fact that up to a certain date they did not live together. In *Faloon v. McIntyre*, 118 Ill. 292, a daughter married and went away from her father's home and established a home of her own with her husband. Afterwards her father and mother came to live with her and her husband, and afterwards the son-in-law made claim for support of the father and mother. It was held that the above rule as to the family relation was applicable. An instruction given concerning the preponderance of evidence in the case was similar in principle to the one on that subject discussed in *Elgin, J. & E. Ry. Co. v. Lawlor*, 132 Ill. App. 280, and 229 Ill. 621. In our opinion in that case we sought to save the instruction from condemnation, but the Supreme Court held that its effect was to wholly omit the number of witnesses testifying to a particular fact or state of facts as being one of the things which the jury were bound to consider, and the conclusion reached was that the instruction would be misleading where the question of numbers was important. In this case, on the question whether claimant had made statements calculated to defeat her claim, the preponderance in number of witnesses was clearly against the claimant. The instruction referred to was therefore erroneous. Appellant contends that the court should have instructed the jury that the claim was barred by the statute of limitations, except as to the last 5 years before the death of Henry Francis. There are two reasons why the court could not give such an instruction. There is proof tending to show that the father was to compensate claimant by giving her his home in Odell at his death. If the jury found that position established by the preponderance of the evidence, then compensation was not due until the father died and the statute of limitations did not

apply. Again, there was proof that within 5 years before the father died he assigned and delivered to her a note for $300; that he afterwards collected the interest thereon, but that the maker of the note paid the $300 to claimant. Upon the supposition that the father was indebted to claimant for the services in question (which is the only theory upon which the statute of limitations applies), then, in the absence of any other evidence on that subject, the presumption is that this note was delivered to claimant as a payment upon that indebtedness, under the principles stated in *Bromwell v. Bromwell's Estate,* 139 Ill. 424, and *Miller & Graves v. Pratz,* 179 Ill. App. 204. We there applied the rule to a check, and we think the same principle applies to a note.

There is evidence tending to show that deceased several times said that he was going to give claimant his home in Odell at his death and that this was said one or more times in her presence. He did not give her said home. It is conceded that if this was a contract, it was void under the Statute of Frauds because not in writing. The evidence on this subject is not harmonious and relates to several different conversations. From some of the testimony it might be understood that the deceased was talking merely of his plan for dividing his property among his children, and that he did not mean to express any obligation to give this home to his daughter. Other testimony on this subject is capable of being understood to mean that said home was to be given her for her services for him as housekeeper and nurse. Her assent might perhaps be implied from her presence when the statement was made, and this would tend to establish a contract to give her a home for her services. Though void, it was competent so far as it tended to prove that each party intended compensation. The serious questions are whether, if such was the contract, she could recover under this claim, which is for specific services, week

by week, at a rate specific in the claim filed, and whether she could recover more than the value of the home. *Peyton v. McLennan,* 129 Ill. App. 654, holds that such a contract prevents a recovery under a *quantum meruit,* except where the contract is inoperative as against the Statute of Frauds or for some kindred reason. In a very similar case of *Whetstine v. Wilson,* 104 N. C. 385, it was contended that if there was such a special contract, unperformed, the law could not substitute a different contract from what the parties had made and permit a recovery on a *quantum meruit.* But the court held that as the intestate failed to perform his part of the special contract, the law implied a promise on his part to pay reasonable compensation for the services rendered by the claimant in pursuance of said special contract. *Hudson v. Hudson,* 87 Ga. 678, was a similar case, with the same holding, with the addition that claimant could recover no more than the value of the home place there promised to be conveyed, and that there should be deducted from that value what claimant had received. Those cases cite other authorities in support of those rules. We are satisfied with these rules as productive of practical justice. It follows that if, on another trial, the jury find that the services were rendered under a contract that they should be paid for by a conveyance of the home place by the father to the claimant, and that such conveyance was not made, then claimant would be entitled to recover the value of said home place when the father died, and it would in such case be a question for the jury, under the proofs then presented, whether said $300 paid to her by the note referred to should be treated as a payment thereon.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*