No. 31,671

Anna Johnson and Emma Clareen, *Appellees*, v. Charles Lander, as Executor of the Estate of Anders Hedin, Deceased, and as Administrator of the Estate of Anna Hedin, Deceased, *Appellant*.

(36 P. 2d 1006)

Opinion filed November 3, 1934.

*David Ritchie,* of Salina, *J. R. Rhoades* and *George R. Lehmberg,* both of McPherson, for the appellant.

*James A. Cassler,* of McPherson, *C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger* and *E. S. Hampton,* all of Salina, for the appellees.

The opinion of the court was delivered by

Thiele, J.: These are appeals arising from allowance of claims against estates of decedents.

Appeals in separate cases have been presented together. In the probate court each of the plaintiffs filed claims against the estates of Anders Hedin and Anna Hedin, where allowances were made, and both of the claimants and the executor of the Anders Hedin estate and the administrator of the Anna Hedin estate appealed to the district court. In that court the two claims against the Anders Hedin estate were tried together, and from a judgment in favor of the

claimants the executor appeals. As the same evidence tended to prove each claim against each estate, and as similar claims and pleadings were filed, they seem to have been treated together up to the beginning of the trial in the district court.

So far as the appeal in the Anna Hedin estate is concerned, it appears from the abstract that the claims against her estate are· still pending and undetermined in the district court. The only appealable order made with reference to her estate was the overruling of a demurrer on February 17, 1933. The notice of appeal by the administrator was not filed with the clerk of the trial court until August 18, 1933, which, under R. S. 60-3306 and 60-3309, was too late. This court is without jurisdiction to entertain the appeal, and it is dismissed.

So far as the appeal in the Anders Hedin estate is concerned, the appellant urges four propositions:

· 1. Whether or not the action is to specifically perform a contract or is to establish a claim for services.

2. Whether the probate court had jurisdiction.

3. If the probate court had no jurisdiction, did the district court have?

4. Does the evidence sustain the verdict?

Omitting caption and signature, the claim filed by Emma Clareen was as follows:

"You are hereby notified that I have a claim against the estate of the said deceased, Anders Hedin, consisting of labor and services rendered by me to the said Anders Hedin and to his wife, Anna Hedin, during their lifetime, and during a period of over thirty (30) years last past. Which services and labor was performed continuously during the said years without any interruption, and that the said services and labor thus rendered by me to Anders Hedin and Anna Hedin, his wife, was by virtue of an oral contract between the said Anders Hedin and Anna Hedin, his wife, and myself, whereby they did each of them separately and together and collectively agree with me that if I would give them during the remainder of their lifetime my love and affection and to the best of my ability comfort them in their declining years and would do as near as possible what a child would do for a parent and assist in their ordinary cares and household affairs and render assistance in the days of sickness and generally to give them such comfort as I could during the remainder of their lifetime that they would leave to my sister and myself their entire estate, and did state that their estate would not be less than three thousand dollars ($3,000) to each.

"That during these years I have performed all of the services demanded of me in every respect, and at the time that the said Anders Hedin made his last will and testament, a copy of which is hereto attached, marked 'Exhibit

A,' and made a part hereof. He does name my sister, Anna Johnson, and myself as the residuary beneficiaries under his last will and testament, but does provide to give over fifty per cent. (50%) of his estate to other parties and institutions, and that I do claim that the estate of Anders Hedin is lawfully indebted to me in the entire sum of the estate, which, according to the agreement should not consist of less than three thousand dollars ($3,000), according to the said agreement made and entered into between the said Anders Hedin and myself, and for which claim I pray a judgment for the sum of three thousand dollars ($3,000), and that I am a claimant against the said estate for said amount of money, and have had, and done all things herein set forth, and that all of these things are within my knowledge, and that I have given all credit to the said estate that the said estate is entitled to, and that there is no set-offs of any kind from me to the said estate."

At the same time she filed a "petition" alleging substantially the same facts as to the contract and performance thereof, and—

"That your petitioner is entitled to all of said estate that is left after the payment of the debts and funeral expenses and the expenses of the last sickness of the said Anders Hedin and Anna Hedin, his wife, and that the said claims of the petitioner consists of all the personal property and real estate belonging to said estate."

Anna Johnson filed a similar claim and petition. After hearing in the probate court the claims were allowed in the sum of $3,000, and the claimants and the executor each appealed to the district court, in which court the executor, by motions to elect and to strike, and by demurrer, raised the question whether the action was one to recover an indebtedness, or was one to specifically enforce a contract. Rulings adverse to the executor's contentions were made, following which he filed an answer denying the allegations of plaintiff's petition and alleging that if deceased was indebted for services as alleged in the petition, such indebtedness was fully satisfied in the lifetime of the deceased. Thereafter, trial by jury was had. A verdict was returned for the plaintiffs, the amount of their joint recovery "to be the estate, less taxes, debts and expenses." The jury answered fourteen special questions submitted, which will be mentioned later. In support of his contention that this was not proof of a claim against the estate, but actually was a suit to specifically perform a contract and subject only to the jurisdiction of the district court, appellant does not refer us to any Kansas case in point, nor does our search reveal anywhere the precise point has been decided.

It may be conceded that certain language in the demands and petitions can be so construed that it may be said claimants were

seeking specific performance, while other statements just as clearly show they were seeking recovery for the value of services rendered by virtue of a contract which fixed that value. While the trial court might well have sustained the motion to require claimants to elect, and thus have clarified the matter, it cannot be overlooked that when the claimants filed their demands in the probate court, they were invoking only such jurisdiction as that court possessed and which did not include jurisdiction over an action in specific performance. The matter was tried to a jury which, to say the least, would only be called in an equitable action in an advisory capacity, and there is nothing in the record to indicate it was so called here. As we view the matter, the issue was tried on a basis more consistent with allowance of a claim against the estate than for specific performance of a contract with the decedent. For a complete answer, however, it is necessary to refer to the jurisdiction of the probate court. Our statute (R. S. 22-701 *et seq.*) as amended gives the probate court a wide jurisdiction in allowing demands against estates of deceased persons, the procedure therefor being fixed, and the only provision for proof of claim otherwise than in the probate court is by action in the district court, as provided by R. S. 1933 Supp. 22-707, although under this last section it has been held that it is not error for a district court to decline to entertain such claim. (See *State v. Zimmerman,* 121 Kan. 346, 246 Pac. 516.) In *Correll v. Vance,* 127 Kan. 840, 275 Pac. 174, plaintiff invoked the jurisdiction of the district court. The petition alleged that prior to her marriage to him her husband had made a will, which had been admitted to probate; that she had never elected to take less than a widow's share. She prayed that the will be set aside; that she be allowed her widow's allowance; that the property remaining be used to pay debts and expenses of administration, the balance to be divided between herself and her husband's children by a previous marriage. The court quoted from *Kothman v. Markson,* 34 Kan. 542, syl. ¶ 3, 9 Pac. 218, viz.:

"While the district court has jurisdiction over certain matters relating to the estates of deceased persons, it is an equitable jurisdiction, and in its exercise the court will be governed by the rules of equity, and the plaintiff, therefore, cannot successfully invoke the jurisdiction of the district court to enforce the payment of a claim against the estate of an intestate, where the statute has provided the relief sought may be obtained in an ordinary legal proceeding in the probate court, and no special circumstances requiring the aid of equity are disclosed." (p. 842.)

And cited many cases in support, and held that—

"Where a party has a plain and adequate remedy by an ordinary legal proceeding in a probate court, touching a matter over which the probate court is already exercising jurisdiction, with ample power to grant the relief prayed, he may not invoke the jurisdiction of the district court to accomplish the same purpose." (Syl.)

It would thus appear that it was claimants' duty to proceed to have their claims allowed in the probate court, unless there is something inherent in the claim that deprives that court of jurisdiction. At least so far as the demand is concerned, it shows a contract for services to be rendered and a price to be paid therefor, although by reason of contradictory statements there might be a question as to the amount to be paid, a matter not of present concern. Certainly it does not conclusively appear that claimants sought specific performance, and from the issues as framed by the demand, the petition of plaintiff and the answer of defendant, it appears it was not so considered and tried. There have been many cases decided by this court having to do with similar claims against estates of deceased persons, many of which are referred to in *Woltz v. Trust Co.*, 135 Kan. 253, 259, 9 P. 2d 665; earlier cases being referred to in *Webster v. Camp*, 107 Kan. 235, 237, 191 Pac. 284. Many of the cases referred to were actions to specifically enforce contracts, others do not make clear how they originated. In the following cases claims were filed in the probate court: *Ayres v. Hull*, 5 Kan. 419; *Ensey, Ex'r, v. Hines*, 30 Kan. 704, 2 Pac. 861; *Story v. McCormick*, 70 Kan. 323, 78 Pac. 819; *Griffith v. Robertson*, 73 Kan. 666, 85 Pac. 748; *Heery v. Reed*, 80 Kan. 380, 102 Pac. 846; *Dubbs v. Haworth*, 102 Kan. 603, 171 Pac. 624; *Logston v. Needham*, 138 Kan. 439, 26 P. 2d 443.

In *Heery v. Reed*, supra, it appears the measure of compensation was to be the property decendent left.

Although relief was denied in some of the cases last referred to, in none of them does it appear to have been because of invoking the jurisdiction of the wrong court. It is concluded that unless the claim shows on its face that equitable considerations enter into its allowance or the title to real estate is involved, the proper forum is the probate court, and that its jurisdiction was properly invoked here.

It is not necessary to discuss the proposition that the district court had no greater power on appeal than the probate court had.

It having been decided that the claims were properly filed in the probate court, which had jurisdiction to hear them, there is no doubt about the power of the district court to hear them on appeal.

The last contention is that the evidence is not sufficient to support the verdict. There was no testimony offered by the executor disputing in any manner the proof offered by the claimants, as all he offered was the record in the probate court of the Anders Hedin estate. The inventory showed the estate consisted entirely of personal property valued at $13,139.60. Claims totaling $842 had been allowed. The will gave special legacies totaling $5,275 to other persons and the residue to the claimants. Mrs. Hedin had never made an election as widow, and under the statute (R. S. 22-246) she took under the law. (And see *Williams v. Campbell*, 85 Kan. 631, 118 Pac. 1074.) The jury answered special questions as follows:

"(1) Did Anders Hedin in his lifetime orally make an agreement with the claimants, Anna Johnson and Emma Clareen, or either of them, on his own behalf whereby he agreed with said Anna Johnson and Emma Clareen or either of them that if they would give to him and his wife, Anna Hedin, during the remainder of their lifetime their love and affection, and to the best of their ability comfort them in their declining years, and would do as near as possible what a child would do for a parent and assist in their ordinary cares and household affairs and render assistance in the days of sickness and generally to give them such comfort as they could during the remainder of their lifetime that he would leave to the said Anna Johnson and her sister, Emma Clareen, his entire estate? A. Yes.

"(2) If you answer question No. 1 'Yes,' then did Anders Hedin make any other agreement with the said Anna Johnson and Emma Clareen or either of them for any compensation for services rendered or to be rendered except as above stated. A. Yes.

"(3) If you answer question No. 2 'Yes,' then state what such agreement was and the compensation to be paid thereon. A. Anders Hedin made an agreement with Emma Clareen, to take Anna Hedin and care for her the balance of her life for a consideration of $8,500.

"(4) If you answer question No. 3 by setting out such agreement and the compensation to be paid thereon, then has such compensation been paid? A. Yes.

"(5) Was Anders Hedin at the time of his death indebted in any manner to the claimant Anna Johnson or Emma Clareen or either of them? A. Yes.

"(6) If you answer question No. 5 'Yes,' then state fully what was the nature of such indebtedness and the amount thereof. A. For care and services rendered to Anders Hedin and his wife, Anna Hedin, as set forth in question No. 1. Amount of indebtedness, the entire estate left.

"(7) Did Anders Hedin in his lifetime pay to Emma Clareen any amount for the purpose of caring for Anna Hedin? A. Yes.

"(8) If you answer question No. 7 'Yes,' then state the amount of such payment. A. $8,500.

"(9) Did Anna Johnson and Emma Clareen render service and care for the wife of the said Anders Hedin for many years until the death of the wife of the said Anders Hedin? ·A. Yes.

"(10) Did Anna Johnson and Emma Clareen render service to and care for the said Anders Hedin for many years until he went to the home prior to his death? A. Yes.

"(11) Did the said Anders Hedin go to the home and pay his expenses at his own suggestion and for the best interests and care of himself and wife? A. Yes.

"(12) Does the evidence show that Anna Johnson was ever paid anything for the services she rendered to Anders Hedin and his wife? A. No.

"(13) When did Emma Clareen first perform services for Anders Hedin and his wife under an agreement or understanding that she should be paid therefor? A. About the year 1903.

"(14) When did Anna Johnson first perform service for Anders Hedin and his wife, under an agreement that she should be compensated therefor? A. About the year 1903."

Were these answers supported by evidence, and was it sufficient to support the general verdict in favor of claimants? It was shown that Mr. and Mrs. Hedin lived on a farm near Lindsborg. They had no children, and claimants, who were nieces of Mrs. Hedin and whom the Hedins referred to as "the girls," lived near the Hedin farm, and that from as early as June, 1903, until the Hedins moved to Lindsborg in 1919, the claimants or one of them spent a great deal of time at the Hedin farm where they did all sorts of work, not only around the house, but in the field, it not being deemed necessary to make a detailed statement thereof. In 1919 the Hedins moved to Lindsborg to a house they then owned, and from then until about July, 1923, there is no particular showing of what was done. Mrs. Hedin was a large woman, and in July, 1923, she fell and injured herself. She had another fall in September, 1923, and was confined to her bed thereafter, until she was moved to the home of Mrs. Clareen. During that time the claimants, or one of them, looked after the house, did the·work and took care of Mrs. Hedin. In 1928 she was moved to the Clareen home, where she was bedfast, her condition becoming increasingly worse. She was unable to turn over in bed, her legs were stiff, her mind became affected, she couldn't feed herself, lost control of her kidneys and bowels, and during all this time she was taken care of entirely by the claimants or one of them. She died in May, 1931, at the age of ninety-one years. At the time Mrs. Hedin was taken to the Clareen home, Mr.

Hedin quit his residence and went to live at Bethany Home, a home for old folks in Lindsborg, paying to the home the sum of $1,500. At the same time he paid to Mrs. Clareen the sum of $8,500 to pay for the future care and maintenance of Mrs. Hedin. After Mr. Hedin went to the home he would go to the Clareen home every day he could walk, to visit his wife. Frequently he got his meals there, and would be bathed and cleaned up by claimants. Members of the family would take him riding. He died five days before his wife at the age of eighty-eight. There was much other testimony concerning services rendered. The question remains as to whether the services were performed under a contract they were to be paid for.

The claimants being incompetent to testify concerning the contract, it was necessary that it be shown by other witnesses. Mrs. Nyberg testified that in June, 1903, at the Hedin home, in the presence of Mrs. Hedin and the claimants, Mr. Hedin said claimants were going to get everything they had left when they died, to take care of them, and asked witness if she heard, and that the girls said they would do so; that Mr. Hedin said:

"Girls, I can't repay you for what you are doing, but if you take care of us and help us we want to give you all we have got afterwards."

And Mrs. Hedin said: "Yes, I want them to have everything we have got." She also testified to another occasion when the Hedins lived in Lindsborg, Mrs. Hedin said she wanted Emma and Anna to have what they had because they didn't want Rosanders (relatives of Mrs. Hedin) to have anything, to which Mr. Hedin said "Yes." Mrs. LeBlanc, a foster daughter of Mrs. Clareen, testified that while Mr. Hedin was living at the old folks' home, she heard a conversation between Mr. Hedin and her mother and aunt in which his case was discussed and in which he asked if they would be willing to care for him like they had been doing and he would see that "they were settled $3,000 apiece for their work." Emil Jacobson, who had known all the parties for forty years, testified as to claimants' work and that he heard Mrs. Hedin say, in Mr. Hedin's presence, something about paying them and Mrs. Hedin said:

"Oh, they will have it when I am dead; they will get it all when I am dead."

Fred Olson worked for the Hedins in 1900, and was frequently at their place. He testified as to claimants' services, and as follows:

"Q. Did Mr. Hedin make any statement to you in regard to any agreement he had with these girls? A. Yes, sir.

"Q. What was it? A. Not with the girls; no, sir. He stated what he was

going to do; he said, 'Those that take care of us in our old age is going to have ours.'

"Q. Did Mrs. Hedin ever make any statements to you in regard to the Rosanders in the presence of Mr. Hedin? A. Yes, sir; there is where the trouble came in. She was raving over that, 'I was there for nine years, and I never got a thing for what I done. I didn't get as much as a pair of shoes. But they aren't going to have anything after me.' That is when Mr. Hedin spoke up, 'Ma, those that take care of us in our old age is going to have what we got,' or 'our inheritance,' I don't know. It was all Swede talk."

Mrs. Albertina Christian, a neighbor of the Hedins in Lindsborg, after testifying as to services rendered, said she had conversations with them on several occasions regarding the claimants, and Mrs. Hedin said:

"And she would stop and then she would say 'Well, the girls'—she always called them the 'girls'—she said they had been faithful, rain or shine, she said 'they are faithful, and those are our girls, Anna and Emma, and they are the ones that if they will take care of us and look after us, they shall have all we got."

And Mrs. Hedin said:

"The girls were our girls; they were our faithful servants."

As to the $8,500 payment made, there is not very much testimony, but it appears that about the time Mr. Hedin went to the old folks' home he told Mrs. Clareen about taking Mrs. Hedin into her home and said, "I am wore out." "I can't take care of her and clean her up and change the bed, and change her clothes and give her her bath," and said to Mrs. Clareen: "I will give you $8,000 if you will take ma from now on until her death."

It was shortly after that Mrs. Hedin was moved into the Clareen home. Claimants admitted Mrs. Clareen was paid $8,500.

It would unduly extend this opinion, already quite lengthy, to refer to the many cases of this character where sufficiency of proof has been considered. One of the leading cases is *Griffith v. Robertson*, 73 Kan. 666, 85 Pac. 748, wherein it was said:

"The rendition of the services by the plaintiff is not denied. That the mother intended to pay liberally therefor is clearly shown. The conclusion that the plaintiff at all times expected to be paid therefor is fully justified by the evidence. That there was an express contract between the mother and daughter is a fair deduction from the testimony. That the plaintiff was kind and careful of her mother's comfort during her illness is shown by the repeated statement of the mother that 'Ina is a good, good girl.' The fact that payment was to come after the mother's death, if the service continued to that time, and that an arrangement for this purpose was to be made when the mother went to

Wellington, suggests that it was intended that payment would be provided for by the provisions of a will. . . .

"It is not essential that a formal offer and acceptance, in writing or otherwise, be shown. In the absence of more direct evidence the fact may be established by circumstances. An express contract exists whenever there is a mutual meeting of the minds upon any contractual proposition. The essential contractual proposition in this case is: Were the services in question to be paid for? What was the mutual understanding of these parties upon this subject? This was a proper question for a jury, and that tribunal has answered that the parties intended that the services should be paid for." (p. 671.)

And so here. A review of the testimony, as outlined above, shows the contract rather directly, but with the circumstantial evidence also considered, there is no doubt that the jury had ample ground for making the answers it did. The fact that the Hedin home was broken up and that Mr. Hedin went to the old folks' home, and the fact that he made a payment of $8,500 for the future care of his wife did not abrogate the original contract. The force and effect of these facts were doubtless argued to the jury. In the absence of some showing that the claimants accepted this payment for services previously rendered, and the only proof is that future services were contemplated, it cannot be said the original contract was satisfied.

Some argument is made as to the effect of the failure of the widow to make an election. The law did not prevent Mr. and Mrs. Hedin from making contracts and incurring obligations which might be enforced after their deaths. (*Webster v. Camp*, 107 Kan. 235, 191 Pac. 284.) The fact that the allowance of the claim against the estate of Mr. Hedin might exhaust his estate does not militate against the allowance of the claim.

We have examined the complaint made of instructions to the jury, and find it is without merit. The complaint with reference to overruling of appellant's demurrer comes too late. The dates are the same as those in the Anna Hedin estate.

The judgment of the trial court allowing the claims against the estate of Anders Hedin is affirmed.

BURCH, J., not sitting.