City of Kinsley v. Morse.

2. Change of beneficiary.

---

## THE CITY OF KINSLEY v. D. M. MORSE.

1. INCOMPETENT EVIDENCE—*Admission—Withdrawal—Immaterial Error.* Where incompetent testimony is admitted over the objection of a party, and at the close of the witness's testimony the court withdraws such incompetent evidence from the jury, and directs them not to consider the same, *held*, where such incompetent evidence is not of a character likely to create sympathy for the party offering the same, or to prejudice the jury against the opposite party, such error is immaterial, and will be disregarded.

2. EVIDENCE—*Admission—Harmless Error.* Where incompetent testimony is received, but the facts sought to be established thereby are not contradicted, and the cause is tried upon the theory that such facts are true, *held*, the admission of the testimony not material.

37—40 KAS.

3. CITY — *Defective Streets — Damages — Ordinary Care.* In an action against a city for damages for personal injuries received because of defective streets or sidewalks, where contributory negligence is alleged as a defense by the city, it is only necessary for the plaintiff to show the exercise of ordinary care and diligence in passing over such street or sidewalk; and what constitutes ordinary care must be determined by the facts surrounding each case.

4. INSTRUCTION — *Refusal, Not Error.* Where an instruction is refused which correctly states the rule of law, but the instruction is not based upon or applicable to the facts of the case, *held*, not error to refuse such instruction.

5. INSTRUCTION, *Refused — Harmless Error.* Where an instruction correctly stating the law applicable to a case is refused by the court, but the jury in answer to special questions of fact find all the facts against the theory of the instruction refused, *held*, the refusal of the instruction not reversible error. (*Mfg. Co. v. Nicholson,* 36 Kas. 383.)

## Error from Edwards District Court.

MORSE brought this action against *The City* to recover the sum of $5,000 for personal injuries received by him on the night of the 25th of November, 1885, caused by falling into a cellar-way that protruded into a street of said city. The record shows that Mosher & Matheney were erecting a building on Marsh avenue and Sixth street, in the city of Kinsley, and had obtained permission of the city authorities to use a portion of the street for the storage of material during the construction of the building. There was a basement to the building, and a cellar-way leading from the street into the basement. This cellar-way was some ten feet long, four feet wide, and from four to six feet deep, and extended into the street some three feet. The sidewalk during the construction of the building had been removed, and people traveled along near where the sidewalk had been, and made a path leading by this open cellar-way; that this cellar-way had been under construction for a month or six weeks, and during the greater part of the time was left open without any guard or protection around it; that prior to the accident to the plaintiff two other persons had fallen into the cellar-way, and numerous complaints had been made to the city marshal and to the mayor and city authorities, and the city

marshal notified the owners of the building that they must keep it closed up and put a railing around it, so as to prevent accidents, or the city would be liable to pay damages. Such notice was given on the day before this accident, prompted by the fact that a citizen had fallen into the cellar-way the night previous. On the evening the plaintiff received his injuries he had crossed over the street near this cellar-way, and shortly afterward returned in company with another person, and they attempted to pass by this cellar-way. It was a very dark night, and they had no lantern or light, and as the plaintiff came to the cellar-way he slipped and fell in and received injuries to his spine and back, affecting his left side, causing partial paralysis and loss of use of his left leg, from which injuries he was confined to his house some days, and has been able to do but comparatively little work since. A trial was had by jury at the March term, 1887, and special findings of fact were made at the request of the city, which are as follows:

"*Ques. 1:* Was the excavation into which it is alleged the plaintiff, D. M. Morse, fell on the 24th day of November, 1885, made by the city of Kinsley or its officers in authority? If not, by whom? *Ans.:* Excavation was made by B. R. Mosher and Matheney, with the knowledge of city officers.

"Q. 2. Was there a building in course of erection on the lot adjoining said excavation at the time plaintiff fell into it? A. There was.

"Q. 3. Was the sidewalk on the west side of Marsh avenue adjoining said lot, used and occupied by the owners of said lot for the purpose of depositing materials for the construction of said building prior to and at the time the plaintiff fell into said excavation? If so, how long had it been used? A. Was used at the time and for sixty or ninety days before plaintiff fell.

"Q. 4. Were there any materials, boxes or building apparatus deposited on the sidewalk adjoining said building and near said excavation at the time the plaintiff fell into it? A. There was.

"Q. 5. Had a guard or barricade of any kind been put along the side and end of said excavation, or around it in any

manner, before the plaintiff fell into it? If so, when? A. There had been at certain times on the side.

"Q. 6. Was a guard or barricade of any kind put around said excavation during the day or the night of which plaintiff fell into it? If so, how long before plaintiff fell into it was it put up? A. There was not.

"Q. 7. Was there any guard around said excavation at the time plaintiff fell into it? A. There was not.

"Q. 8. How long, or about how long before plaintiff fell into said excavation, had the guard put there been removed? A. Several days.

"Q. 9. Did the defendant or its officers have any notice or knowledge of the fact that the guard put up around said excavation prior to the accident to plaintiff had been removed or torn down before plaintiff fell into said excavation? A. They had.

"Q. 10. Did the plaintiff, D. M. Morse, know before and at the time he fell into said excavation that a building was in course of erection on the lot adjacent to said excavation, and that the sidewalk in front of said building, and near said excavation was used and occupied for the storage of materials for the construction of said building? A. He did.

"Q. 11. Did the plaintiff know of the existence and condition of said excavation before and at the time he fell into it? A. He knew of the excavation, but not of its condition.

"Q. 12. How long prior to the night he fell into it did the plaintiff have knowledge of the existence and condition of said excavation? A. We do not know how long.

"Q. 13. Was the plaintiff in a position that he could have knowledge of said excavation by exercising ordinary care and prudence? A. Yes.

"Q. 14. Was it light or dark at the time plaintiff fell into said excavation? A. Very dark.

"Q. 15. Was the plaintiff, at the time he fell into said excavation, walking upon the sidewalk near said excavation, without a light? A. Yes.

"Q. 16. If you find that plaintiff had knowledge of the existence and the condition of said excavation prior and at the time he fell into it, or could have had such knowledge by exercising ordinary care and prudence, did he exercise ordinary care and prudence in traveling upon that portion of the sidewalk near the said excavation, in the dark, without a light? A. He did.

"Q. 17. Did the plaintiff, upon the night he fell into said excavation, take any precaution or exercise any ordinary care and prudence to guard against an accident at that point? A. He did.

"Q. 18. Could the plaintiff, by the exercise of ordinary care and prudence, have prevented his falling into said excavation at said time? A. He could not.

"Q. 19. Would the plaintiff have fallen into said excavation if he had used ordinary care and prudence to prevent an accident? A. Yes.

"Q. 20. Did the plaintiff know the nature and character of said excavation before and at the time he attempted to pass by it on the night he fell into it, and did he, knowing this, voluntarily attempt to pass by it? A. He voluntarily attempted to pass by."

Verdict and judgment in favor of the plaintiff for $4,400. The city complains of this judgment.

*W. H. French*, city attorney, for plaintiff in error.

*Nelson Adams*, for defendant in error.

Opinion by CLOGSTON, C.: Numerous errors are presented for review, many of which we will not consider, but will attempt to follow counsel through his elaborate brief, and take up such of the errors presented as we deem entitled to consideration. The first alleged error which we will examine is that the plaintiff was permitted to testify, over the objection of the city, as to his poverty; that he had a family; and the age of his wife. The objection to this testimony was overruled, and plaintiff testified that he had a family consisting of a wife 27 years old, and one child, and that he had about ninety dollars due him for work. At the close of this testimony, the court, of its own motion, struck out all of that part objected to by the defendant, and informed the jury that they should not consider it; that it had committed an error in admitting it, and that they must not give it any consideration in arriving at their verdict. This testimony was clearly erroneous, and ought not to have been permitted to go to the jury; but we are unable to see how this testimony could in

**1. Incompetent evidence withdrawn from jury.** any manner prejudice the defendant.   There was nothing about it that would tend to arouse great sympathy for the plaintiff.   The fact that his wife was 27 years old, that he had one child, and about ninety dollars in money due him as the result of his labor, were not statements likely to influence the jury in his behalf, or prejudice them against the city.

The second error assigned is, that the court permitted witnesses Shook, Huffman, Reitler and others to testify that the place where the plaintiff fell was a dangerous place.   On cross-examination the same statement was brought out, and in fact the city marshal testified to the dangerous character of the place and directed Mosher to put a rail around it.   Admitting that this testimony was all incompetent, yet we cannot **2. Incompetent evidence; admission not material.** see how it would in any way prejudice the defendant.   There is no pretense in this record that it was not a dangerous place; no evidence was offered by the defendant to show that it was not dangerous, but it was tried upon the theory that it was a dangerous place, and one that the city ought not to have allowed to remain uninclosed, and such as the persons erecting the building ought to have kept protected.   We therefore cannot see what difference it could make whether the witnesses said it was a dangerous place or not; it was conceded to be so, and the evidence of its character became immaterial.   We think no substantial error was committed by the admission of this testimony.

All the other assignments of error are as to the charge of the court and the refusal of the court to give the instructions asked for by the defendant.   Before passing to these instructions we are free to say that, after a careful examination of the instructions given by the court and those requested by the defendant, we are of the opinion that a large number of the instructions asked for by the defendant ought to have been given, and that the court committed error in refusing to give some of those instructions, and if not cured by the findings of the jury such errors will require a reversal of the cause.   The

defendant requested the court to give the following instructions:

"Every person passing over the sidewalk of a city is required to exercise such care and diligence in doing so as men of ordinary care and diligence would use under similar circumstances. In determining whether the plaintiff used such care at the time he received the injuries complained of, it would be proper to consider his knowledge of its condition, the time, the light or darkness at the time and place the injuries were received, his manner of traveling, and any other fact appearing from the evidence which would tend to show such care, or the want of it; and if you find from the evidence that the plaintiff directly contributed to the injury by such negligence, you will find for the defendant."

And the court in lieu thereof, gave the following:

"7. In passing over the sidewalks of the city of Kinsley, the defendant, the plaintiff was required to use such care and diligence as ordinary persons employ in passing over the streets and sidewalks of the same; and in connection with this injury you may consider the knowledge of the plaintiff in relation to the dangerous condition of the walk."

The criticism of the learned counsel upon this seventh instruction, we do not think well taken. The jury doubtless understood what the court meant in using the words "ordinary care and diligence as ordinary persons use." "Ordinary persons" was doubtless as good a term to be used by the court in this connection to convey to the minds of the jury what persons he referred to, as the one suggested by counsel, and in common parlance when we speak of "ordinary persons," we intend to speak of men of ordinary care and diligence, in relation to any particular thing; and while the seventh instruction given is not as full as it might have been, yet we think it substantially embraced the instruction requested.

3. Defective streets; ordinary care.

Defendant also requested the court to give the ninth instruction, which is as follows:

"If you find from the evidence that the place where the accident occurred was necessarily more dangerous than the ordinary streets and sidewalks, by reason of improvements

being made at the time on the lot adjoining the sidewalk where the accident occurred, and the presence of obstructions or excavations in said sidewalk, made in the prosecution of such improvements, and that this condition of things was known to plaintiff, or by the exercise of ordinary care and prudence could have been known by him, then the plaintiff was required to use more than ordinary care and caution to avoid the accident; and if he failed to do so, and thereby contributed to the injury, he cannot recover in this action."

The ninth instruction requested, we think, was properly refused; not, perhaps, that it was entirely covered by the instructions given by the court, but because the instruction taken by itself was wrong. It implies that under some circumstances a person in passing over a street of a city, knowing its condition, is required to use more than ordinary care and caution to avoid an accident. This is not the law in this state. (*City of Emporia v. Schmidling*, 33 Kas. 485.) Ordinary care and caution is all that is required at any time to avoid the class of injuries involved in this action. What ordinary care may be under a given state of facts, is the question. In one case it may require greater vigilance than it would under another state of facts; but, after all, it would simply be ordinary care under the circumstances surrounding that particular case, and nothing more. It would have been well for the court to have included in his general charge, and he ought to have done so, an explanation of what ordinary care would be under certain facts. He ought to have said to them, if the plaintiff knew the street, and that the place was dangerous, and the night was dark, then it required greater vigilance and care than it would under other conditions and at other times. (*Corlett v. City of Leavenworth*, 27 Kas. 673; *Osage City v. Brown*, 27 id. 74.) But this care, whatever it would be, would still be ordinary care.

The tenth instruction asked by the defendant, and refused by the court, in substance directed the jury that if the plaintiff at the time he passed over this sidewalk knew that the sidewalk was unsafe by reason of the obstructions and excavations, and he still persisted in passing over the walk

when he might have taken another walk to reach his destination, then that the plaintiff could not recover. This presumes facts not shown by the evidence. If there was any other sidewalk by which the plaintiff could have reached his destination, that fact is not shown. True, there had been a walk further out in the street, going out along the rubbish and building material, during the construction of the building, but at the time of the accident a large part of this rubbish had been removed and the travel seemed to go by the path or way the plaintiff used. It was shown to be wide enough for two persons to walk on, and was the one used by the people of the city in passing that place. We think this instruction was not applicable to the facts.

*4. Instruction; refusal, not error.*

The court also refused to give instructions 13, 14, 16 and 17 asked for by the defendant, and gave nothing in their stead. These instructions ought to have been given. They were general in their character, and some of them such as are ordinarily given in this class of cases. While we believe as a rule that too many instructions are given to juries, yet in this class of cases there ought to be some of these general instructions given, such as are embodied in No. 16, which is as follows:

"That when witnesses are otherwise equally credible, and their testimony otherwise entitled to equal weight, greater weight and credit should be given to those whose means of information were superior; and also to those who swear affirmatively to a fact rather than to those who swear negatively, or to a want of knowledge or recollection."

This instruction, or one of this character, ought usually to be given in cases where there is evidence tending to show certain facts by evidence not positive in its character; or in other words, the distinction between negative and positive testimony. But after a careful investigation of this case we are not willing to reverse it on account of the failure to give this instruction, for when this case is examined there is very little evidence that is of a negative character. True, a few witnesses testi-

fied that they did not see any guard around this excavation when passing by it, but most of them said that there was no guard there at the time they did pass; while on the other hand, there is very little positive testimony showing that there was a guard there, or had been for a week prior to this time. Dr. Mosher was not in the town at the time of the injury; he said, however, that he passed there that evening, and there was a guard-rail around as described, and that he visited the place in the night-time and found a guard-rail there. Now the doctor did not say when he first found that guard-rail there, and he did not say it was prior to the accident. He does inferentially say that it was there before the injury, but nowhere located the time definitely so that it could be clearly said that it was before the injury occurred. Clarence Mosher, the doctor's son, testified that he put the plank and barricade around the excavation on the night of the injury. What time that night? He said before he went to supper. Did he go to supper on that evening before the accident, or afterward? It is shown that the accident occurred immediately after the plaintiff had his supper. Now will it be insisted that this evidence shows that this guard-rail was placed there before the injury? Young Mosher does not say that it was before the accident, but when he went home for supper. Other witnesses, who went home late that evening for supper, say there was no rail around it. A short time thereafter the plaintiff fell in, and there was no guard-rail there then. Dr. Mosher said shortly after the injury, when he went home, there was a guard-rail around it. The jury could well infer from this testimony that as there had been an injury the night before by a person falling into that hole, that when the injury to the plaintiff occurred, and he was carried home dangerously hurt, that the board was put around the hole, and was there the next morning as found, and not before.

As said already, we think there was error in the court refusing to give some of these instructions requested by the defendant, but yet we think the necessity for these instructions

has been cured by the answers made by the jury.
The jury found that the plaintiff was exercising
ordinary care in traveling on this street at the
time of the injury, and that by the exercise of ordinary care
he could not have prevented the injury.. They also found that
there was no guard-rail around that place that night, and that
this fact was known to the city.   If these findings are true —
and there is ample evidence, we may say, to support them—then
it was immaterial whether these instructions refused were given
or not.   If the plaintiff was guilty of no negligence, but was
exercising ordinary care under the circumstances, it made very
little difference whether the court instructed properly on the
question of ordinary care or not, or properly gave the law of
contributory negligence; (*Manufacturing Co. v. Nicholson,* 36
Kas. 383; *Woodman v. Davis,* 32 id. 344;) and it was imma-
terial whether the court gave some of the other instructions
in relation to the putting up of this rail.   The jury found
that it was not put up, and the refusal to give the instructions
was not such material error as requires reversal. (*City of Em-
poria v. Schmidling,* 33 Kas. 485.)

*5. Refusal of
instructions,
harmless error.*

In conclusion, we may say that the uncontradicted evidence
in this case shows: First, that the place where the injury
occurred was a dangerous place; second, that its character
was known to the city and to the persons erecting the build-
ing; third, that it was not only open that night, but had re-
mained uninclosed and unprotected for a greater part of the
time said building was under construction.   These facts being
substantially undisputed, there were but two things for the
jury to find or the court to instruct upon, and they were the
contributory negligence of the plaintiff and as to the amount
of his recovery.   The jury found that he was not negligent,
and we think the evidence sufficient to sustain the verdict on
the amount of recovery. (*City of Salina v. Trosper,* 27 Kas. 544.)

We therefore recommend that the judgment of the court
below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.