MICHAEL HEERY et al., as Executors, etc., v. MAGGIE REED.

No. 16,076.

SYLLABUS BY THE COURT.

1. EVIDENCE—Transactions Had with Deceased Persons—Imma-. terial Error. The plaintiff was not competent to testify in her action against the executor in regard to her services in nursing and caring for deceased and of other transactions had' personally with deceased, but as the same facts were shown. by other testimony and there was in fact no contradictory or· conflicting testimony on the subjects the error in the admission. of the testimony is not material.

2. CONTRACTS—Statute of Frauds—Statute of Limitations—Re-nunciation—Election of Remedies—Fraud. Under an oral agreement a girl was received into the home of decedent to. live with and work for him until the death of himself and wife, in consideration of which she was to receive the property of' decedent at his death. In execution of this agreement she. faithfully served decedent for twenty-two and one-half years.

and until her discharge a few years before his death, when he
paid her $200 on account and at the same time fraudulently
induced her to sign a receipt containing a provision of which
she was not aware acknowledging payment in full of all debts
and demands, and when he died it was found that no pro-
vision had been made by will or otherwise to compensate her
for her services under the agreement. *Held:* (1) The contract,
although not in writing, is enforceable. (2) As per-
formance of the contract was to be completed and compensa-
tion paid at the death of decedent and his wife the statute of
limitations would not ordinarily begin to run against plain-
tiff's cause of action for her services until that event trans-
pired. (3) The fact that there was a renunciation of the
contract by the decedent before his death did not compel plain-
tiff to end the contract relation. She was at liberty to keep
the contract alive and await the time for final performance
specified in the contract. (4) The testimony sufficiently sus-
tains the findings and verdict rendered in her favor.

Error from Shawnee district court; ALSTON W.
DANA, judge. Opinion filed June 5, 1909. Affirmed.

*A. F. Williams, O. E. Hungate,* and *C. A. Magaw,* for
the plaintiffs in error.

*D. H. Branaman,* and *J. B. Larimer,* for the defend-
ant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Maggie
Reed to recover from the estate of Patrick Devenney,
deceased, for services performed by her for Patrick
Devenney in his lifetime under an agreement that she
should live with and work for the Devenneys and have
all Devenney's property at his death. Patrick Deven-
ney and his wife, being childless, took Maggie into the
family when she was about six years old, and she lived
at Devenney's and served them faithfully as companion,
chore-girl, nurse, seamstress, farm-hand and house-
keeper until she was twenty-nine years of age. Mrs.
Devenney was sick for a considerable time before her
death, and Maggie nursed and cared for her in addition
to doing the ordinary household work. After the death

of Mrs. Devenney, which occurred in 1894, Maggie had entire charge of the house, and both before and afterward did a great deal of laborious service in feeding hogs and cattle, milking cows, cutting wood and planting and harvesting crops. Mr. Devenney appears to have been well satisfied with her conduct and work until he learned that she had married Bob Reed, when he ordered her to leave the place. About that time Devenney paid her $200, and she signed a receipt for the amount, which, among other things, stated it was "in full of all dues and demands and debts whatsoever." When Mr. Devenney died a will was found making disposition of all of his property, but no part of the property was given to Maggie, nor was any provision made to pay for her services.

In 1907 she presented a claim against the estate, and a trial before a jury in the probate court resulted in an award of $5800. An appeal was taken to the district court, and upon a retrial the jury fund that she was entitled to recover $4924.43. In answer to special questions the jury found that she had resided in the Patrick Devenney home twenty-two and one-half years, that there was a special contract entered into between the plaintiff and Devenney in regard to compensation for services, and that it was agreed that if she would thereafter remain in his home she should upon his death receive his property. It was also found that in August, 1900, Patrick Devenney had given her $200, but that the receipt signed by her acknowledging payment in full was fraudulently obtained, and that she was induced by Patrick Devenney to sign the receipt without knowing its contents.

The first contention is that some of the testimony given by Maggie trenched upon the rule of section 322 of the civil code, which prohibits a party in an action against an executor from testifying in his own behalf in respect to any transaction had personally with the deceased. Much of the testimony objected to, which

related to work done by Maggie at Devenney's, was. properly received. It did not relate to personal transactions with Devenney or to actions in which Devenney participated. However, she did testify that she had nursed and cared for Patrick Devenney during a protracted illness, and there was also some other statements which might be regarded as such personal transactions as are forbidden by the code. In *Clifton v. Meuser,* 79 Kan. 655, the court had under consideration. the meaning of a personal transaction as used in section 322 of the code, and held that it meant an action participated in by the witness and the decedent. In. that case it was said:

"In an action against an administrator for services in nursing, caring for and .boarding the decedent the· plaintiff is an incompetent witness to prove the fact of· their performance, unless the circumstances are shown to have been such that acquiescence by the decedent is. not inferable therefrom." (Syllabus.)

Although some of the testimony of Maggie was not competent, its admission can not be regarded as material error. There was competent testimony given by· others as to the work done by her for Devenney which covered practically every phase of the objectionable· testimony. There was in fact no contradictory or conflicting evidence on these features, and indeed it may be· said that there was no real controversy in the case in respect to the work done by Maggie for Devenney. No prejudice therefore could have resulted from the admission of the erroneous testimony, and a judgment can never be reversed for an error which does not affect the· substantial rights of the adverse party. (Civ. Code, § 140; *C. B. U. P. Rld. Co. v. Butman,* 22 Kan. 639; *Osborne, Ex'r, v. Young,* 28 Kan. 769; *Bryant v. Stain-. brook,* 40 Kan. 356; *City of Kinsley v. Morse,* 40 Kan. 577; *Whitney v. Brown,* 75 Kan. 678; *Casualty Co. v. Colvin,* 77 Kan. 561.)

It is next contended that there was no enforceable contract between Maggie and Devenney, and· that the·

evidence in the case does not support the findings and verdict of the jury. It is argued that as Maggie became a member of decedent's family she stood toward him in the relation of parent and child, and that therefore no promise to pay for services should be implied, but it should be assumed that her services were rendered from considerations of duty rather than for payment. Maggie's right to compensation, however, does not rest upon mere implications or presumptions. There was testimony of an express agreement to pay for the services to be rendered. In *Griffith v. Robertson*, 73 Kan. 666, Mr. Justice Graves remarked:

"In accordance with a wise and beneficent public policy, designed to protect and preserve the relations which belong to the home and the family fireside, the law presumes all such services to have been rendered solely from considerations of filial affection and duty. This, however, like any other presumption of fact, may be overcome, and a contract, if any existed, may be established by any competent evidence." (Page 671.)

The trial court advised the jury that Maggie could not recover unless they found that there was a contract or mutual understanding that she should be compensated for her services out of the estate of Patrick Devenney after the decease of himself and wife, and upon testimony which is deemed sufficient the jury found that such an agreement had in fact been made.

It is said that the contract, not being in writing, was within the statute of frauds, and therefore not enforceable. But it was a contract which admitted of full performance within a year. It was one, too, in which, according to the findings of the jury, there was performance on the part of Maggie and acceptance on the part of Devenney. (*A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110.) Contracts of a similar kind have been upheld as against such attacks as are made against the one in question, and the decisions in those cases specifically answer most of the contentions presented here.

(*Grisham v. Lee,* 61 Kan. 533; *Bonebrake v. Tauer,* 67 Kan. 827; *Griffith v. Robertson,* 73 Kan. 666; *Anderson v. Anderson,* 75 Kan. 117; *Bichel v. Oliver,* 77 Kan. 696.)

There is a further contention that Maggie's cause of action was barred by the statute of limitations. It is doubtful if this was presented to or decided by the district court. Counsel for the executors made a statement to the jury of the defenses on which they would rely and did not enumerate the statute of limitations. In any event the statute does not bar a recovery. The claim is made that Maggie's cause of action accrued when she was discharged, and that three years after that time it became barred. According to the contract found by the jury Maggie's term of service was to continue until Patrick Devenney and his wife should die, and compensation for her services was to be made at their death. Ordinarily the statute of limitations does not begin to run on a contract for a continuing service until the contract has been fully performed. It is argued that when Patrick Devenney dismissed Maggie he in effect repudiated the contract and that set the statute in motion. The discharge operated, it is true, as a breach of the contract, and when it occurred Maggie had the option to treat the contract as broken and sue for damages. On the other hand, Devenney could not force his renunciation of the contract upon Maggie. She was at liberty to treat the renunciation as inoperative and to hold herself in readiness to do that which the contract required of her and await the death of the Devenneys for complete performance and full payment. In volume 25 of the Cyclopedia of Law and Procedure, at page 1070, it is said:

"According to the rule that where one party to an executory contract renounces it before full performance has been made by the other the latter is not bound to continue to perform but may sue at once for the breach, it is held that the statute begins to run from the time

of the renunciation. But in order for this rule to apply the party to whom the renunciation is made must accept it as a breach and treat the contract as at an end."

(See, also, *Howard v. Daly,* 61 N. Y. 362; *Shields v. Carson,* 102 Ill. App. 38; *Kadish et al. v. Young et al.,* 108 Ill. 170; *Inman v. Cotton Mills,* 116 Tenn. 141; *Smith v. Georgia Loan Co.,* 113 Ga. 975; *Foss-Schneider Brewing Co. v. Bullock,* 59 Fed. 83; *In re Funk's Estate,* 98 N. Y. Supp. 934; *Schoonover, Executor, v. Vachon et al.,* 121 Ind. 3; *New Brunswick & Canada R. Co. v. Wheeler,* 12 Fed. 377; 9 Cyc. 637.)

Under the verdict it must be assumed that Maggie did not acquiesce in the renunciation but that she determined to treat the contract as alive and subsisting until Devenney's death. The fact that Maggie accepted a partial payment does not prevent the recovery of just compensation. She appears not to have known that the receipt included a clause acknowledging full payment of all demands, and there is testimony tending to show that the signing of the receipt in that form was accomplished through the deceit and fraud of Devenney. According to her testimony the 200-dollar payment was made and accepted on the theory that it was to apply on account. Such a payment did not affect the starting of the statute of limitations nor prevent the recovery of the balance due for her services.

There is some complaint of the instructions, but the objections so far as they are not covered by the comments already made are not deemed to be material.

Finding no prejudicial error in the record the judgment is affirmed.