No. 38,063

In re Estate of Oscar Francois Marcotte, Deceased, *Appellant*, v. Mary E. Clay, *Appellee*.

(224 P. 2d 998)

Opinion filed December 2, 1950

*Harry K. Allen* and *Howard A. Jones*, both of Topeka, argued the cause for the appellant and *L. M. Ascough, Marion Beatty, Charles L. Davis, Jr.,* and *Robert J. Fowks,* all of Topeka, were with them on the briefs.

*Charles Rooney,* of Topeka, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a proceeding commenced by Mary E. Clay to establish a demand against the estate of Dr. Oscar Francois Marcotte, deceased. From a judgment in claimant's favor, the administrator appeals.

The demand against the estate was originally filed in the probate court July 25, 1949, for wages as a maid in the home of deceased. Judgment was rendered in claimant's favor in the probate court and appeal was taken by the administrator of the estate to the district court where by court order an amended demand against the estate was filed alleging in substance that claimant was a creditor of decedent's estate for services rendered deceased and his family; that on May 30, 1938, she went to work as a maid in deceased's home and worked continuously until October 1, 1948; that she had an oral contract with the deceased whereby she was to receive for her services cash sufficient for her clothing and a small amount for spending money and that when she was no longer able to work, the deceased would pay her in full for her services; that she fulfilled her part of the contract for which she received no compensation except by way of medical attention in the sum of $120 and cash in the amount of $295, and asks judgment for $5,265 after allowing

credits as mentioned. The administrator of decedent's estate in his answer generally denied all claimant's allegations and alleged that the demand is barred by the three and five year statutes of limitation; that claimant has been fully compensated for services rendered; that the contract for services violates the statute of frauds and is unenforcible; and that claimant is indebted to the estate for medical services in the sum of $200.

The case proceeded to trial by the court on the issues formed by the parties. For purposes of clarity we will refer to claimant Mary E. Clay as appellee and to the administrator of the estate of Oscar Francois Marcotte, deceased, as appellant.

The evidence may be related as follows: Appellee testified that she went to work for deceased on Decoration Day, 1938; that she did general housework, the cooking and washing of dishes, cleaning the house of seventeen rooms, and doing the laundry; that the last of July in the following year, Mrs. Marcotte paid her $12 and told her she would pay the balance later. There was never a fixed amount that she was to receive for her services. Up to the summer of 1939, she was paid a little now and then, maybe $4 one time and $7 another time. That prior to going to work for deceased, she became ill and was under the care of a physician; that after she went to work for deceased he treated her for her illness for about four years until she recovered. Appellee made her arrangements to go to work with Mrs. Marcotte, deceased's wife; deceased had a stroke September 23, 1938, after which he was hospitalized for about five weeks and from which he recovered sufficiently to re-engage in the practice of medicine; appellee assisted the deceased in getting into his car in the morning and helping him to the house on his return in the evening.

Three disinterested witnesses testified as to the services performed by appellee in the Marcotte home; that appellee shovelled snow from the sidewalks, mowed the lawn, trimmed the shrubbery and trees, worked in the flower beds, assisted Dr. Marcotte, who was quite feeble, to the garage in the morning and met him in the evening; she opened and closed the doors and assisted him out of the automobile and into the house. A witness who operated a grocery store testified that appellee bought and carried home groceries for the Marcotte family; that she was very cautious in her purchases; that the groceries were charged to the Marcotte account.

Anna Clay, sister of appellee, testified that she had lived in West Palm Beach, Fla., for about twenty years; that she sent her sister

money and clothes; and that she wrote a letter in longhand without making a copy in August, 1946, to Dr. Marcotte; that about ten days thereafter she received a letter in reply from Dr. Marcotte which she retained until 1947 when due to a hurricane occurring in Florida in September, the letter became water-soaked and destroyed with all her other correspondence. The letter was typewritten on the stationery of Dr. O. F. Marcotte, National Reserve Building, Kansas Avenue, Topeka, Kan.; it was signed by Dr. Marcotte; she had never met Dr. Marcotte prior to April, 1948, and did not know his signature; that Dr. Marcotte in his reply letter said that he owed Mary a lot of money and that he had given her a little money now and then on her salary but it was his intention to keep this money for her and pay her later so she would have a trust fund or security in her old age; he stated that Mary was a faithful, conscientious worker and he would like very much to have her remain on in his employ. He did not mention any specific amount of money; he said he received her letter and told her not to worry about Mary's salary. Following receipt of the letter she continued to send Mary clothes and money and had no further communication with the doctor in regard to it.

John S. Dean, Jr., guardian of Dr. Marcotte in his lifetime, testified that the only evidence he found in Dr. Marcotte's records during the period he was guardian concerning payments to Mary was a $15 check dated in December, 1947.

Mrs. Marcotte, widow of Dr. Marcotte, testified on behalf of appellant that she had a conversation with appellee about coming to work as a maid in the Marcotte home about Decoration Day, 1938; that she employed appellee to work as maid for $3 a week; appellee was ill at the time and said she would work for nothing the first month, but Mrs. Marcotte stated to her that nobody worked for the Marcottes for nothing; that she did pay her $3 a week; that the rate of pay never changed and that all the wages were paid; at the end of every week Dr. Marcotte would put the money on the tea wagon and when dinner was over, she would take the money to the kitchen and pay appellee and continued to do so over a period of years, until one day the doctor put too much money on the tea wagon and the appellee saw it; after that she said she wanted the doctor to pay her. Mrs. Marcotte paid her that evening; then appellee wanted the doctor to pay her and the doctor did pay Mary each year after that just before he went south to the Rio Grande Valley to look after his fruit orchards. She saw the doctor pay her in the kitchen. She didn't

count the money he paid her, but he paid her the amount he owed her; that was the way she wanted it. He paid her each year before he went south, because she had an insurance policy; she had two insurance policies down at the Fidelity Bank; she wanted to pay those. This method of payment continued up until the last year that Dr. Marcotte went south which was in 1947; Dr. Marcotte paid appellee before he went south after Thanksgiving Day in 1947, but she did not know how much he paid her. Appellee testified in rebuttal that she received a $15 check from the doctor in December, 1947, and that she had received in all the sum of $295.

On the evidence, the court made extended findings of fact and conclusions of law and rendered judgment for appellee for her services under the contract of employment.

Appellant first complains that the court erred in overruling his demurrer to appellee's evidence. An examination of the record discloses there was sufficient evidence, considering that evidence most favorable to appellee, for the court to have overruled the demurrer.

As stated in appellant's brief, the principal dispute of fact in this case is that there is no competent evidence to support the trial court's finding of an express contract between appellee and decedent. This contention is based on the theory that the only evidence in the record which could be said to support the existence of the contract is that contained in the testimony of Anna M. Clay, sister of appellee, and portions of appellee's testimony, all of which was admitted over appellant's objections. First, we shall consider the testimony of Anna M. Clay, sister of claimant living in Florida, who testified that she wrote a letter in longhand and made no copy and mailed it to the decedent at his address in Topeka, Kan.; that about ten days later she received a letter in reply signed by decedent, Dr. Marcotte, wherein he stated as hereinbefore related that he owed appellee a lot of money; that he would give her a little money now and then on her salary but it was his intention to keep this money for her and pay her later so she would have a trust fund or security for her old age. Appellee laid a proper foundation for this secondary evidence by showing that the original letter was destroyed. It is a well settled rule that a letter received in due course of mail in response to a letter sent by the receiver is presumed in the absence of any showing to the contrary to be the letter of the person whose name is signed thereto. This is especially true where the letter is

written on his business stationery. (22 C. J. 94; 20 Am. Jur. 196; *First Nat. Bank v. Ford*, 30 Wyo. 110, 216 Pac. 691, 31 A. L. R. 1441.)

It is a further established rule that upon a proper showing that an original writing containing facts relevant to issues in the case has been lost or destroyed, secondary evidence of its contents becomes admissible. In case of destruction of the original writing, the introduction of secondary evidence of its contents does not depend upon the manner in which the original was destroyed so long as the fact of its destruction is sufficiently established. (20 Am. Jur. 388-9; *Gulliford v. McQuillen*, 75 Kan. 454, 89 Pac. 927.) In the Gulliford case, this court held:

"Where the contents of a letter written by a party to the action to a third party and of a letter of the third party to him are each entirely irrelevant to any issue in the case on trial, except that they tend to prove that the party to the suit was negotiating a trade which was afterwards consummated, the letters are both competent evidence for that purpose, and may be introduced in evidence by reading the same; or if one be lost it is no abuse of discretion if the court allows a witness to testify to the receipt of the letter and to its purport or contents."

In view of what has been said, we think proper foundation was laid for the admission of secondary evidence and that the testimony as related by the witness Anna M. Clay was properly admitted.

Second, appellant contends that the court erred in permitting appellee Mary Clay, over the objections of appellant, to testify in her own behalf that she was intending to quit work but after a conversation with deceased, she continued to work for him. Assuming that appellant is correct in his contention, these facts were otherwise competently shown by other witnesses and as there was no jury to be misled by the admission of the evidence, no prejudice resulted thereby. (*Heery v. Reed*, 80 Kan. 380, 102 Pac. 846; *Giacomini v. Giacomini*, 128 Kan. 699, 280 Pac. 916.) Where a trial court is sitting without a jury, the introduction of incompetent testimony is nonprejudicial if the court's findings of fact and the judgment thereon are well supported by other evidence which is competent. (*Starbuck v. Kingore*, 112 Kan. 102, 106, 210 Pac. 930.)

Where a claim is made for services rendered a decedent under an express contract, it is not essential that a formal offer and acceptance be proved. In the absence of more direct evidence, the fact may be established by the surrounding circumstances, and if from such circumstances it appears that the services were performed, with the understanding on the part of claimant that she was to be paid and

oᵾ the part of the decedent that he was to pay, it is sufficient. (*Logston v. Needham,* 138 Kan. 439, 26 P. 2d 443; *Johnson v. Lander,* 140 Kan. 329, 36 P. 2d 1006; *In re Estate of Nicholson,* 167 Kan. 14, 204 P. 2d 602.)

Rendition of the services by appellee is not denied; that appellee was to be paid for such work is admitted; that there was an express contract between appellee and deceased is a fair deduction from the evidence and circumstances appearing in the case. The evidence to support appellee's claim was sufficient and moreover the circumstances themselves were potent corroborative evidence of the contract. We have little difficulty in concluding that the judgment of the lower court is sustained by substantial competent evidence.

The judgment is affirmed.