UNITED STATES, Appellee

v.

NORMAN E. BRYSON, Sergeant, U. S. Army, Appellant

3 USCMA 329, 12 CMR 85

No. 2032

Decided September 11, 1953

Lt Col Herman P. Goebel, Jr., U. S. Army, 1st Lt Patrick H. Thiessen, U. S. Army, and 1st Lt Jack J. Albert, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

After trial by a general court-martial in Germany of larceny of a check (Specification 1) and forgery of the payee's name (Specification 2) in violation of Article of War 93, 10 USC § 1565, the accused was found guilty and sentenced to dishonorable discharge, total forfeiture of pay and allowances, and confinement at hard labor for five years. The period of confinement was reduced to three years by the convening authority and the sentence, as so modified, was approved by him and affirmed by a board of review in the office of The Judge Advocate General of the Army. We granted the accused's petition for review to consider the admissibility of a photographic copy of what purported to be the check in issue.

Prior to trial, written interrogatories were prepared for the taking of the deposition of Warrant Officer Stiles, the alleged payee of the check. Stiles was then stationed in the United States. An officer from the Judge Advocate section of the convening authority was duly designated to represent the accused. No cross-interrogatories were submitted by him and no objection was made to any part of the written interrogatories prepared by the prosecution. In due course, Stiles' answers to the interrogatories were obtained.

The deposition testimony established that Stiles knew the accused since 1947 but last saw him in 1950 in Germany. During his European theatre service, Stiles was in the same organizations as accused, namely, the 7834 Ordnance Depot and 33d Ordnance Depot Company, APO 757, c/o Postmaster, New York, New York. On February 1, 1950, some months prior to his return to the United States, Stiles made application to the Commonwealth of Pennsylvania for a veteran's bonus. The return address given in his application was the 7834 Ordnance Depot Company, APO 757. In addition to the foregoing, there was testimony based upon a series of questions relating to Exhibit A of the deposition, which was a photostat of what purported to be a check issued by the Commonwealth of Pennsylvania to Stiles as payee, and which bore a designation "World War II Veterans Compensation Fund." Since that testimony constitutes the only evidence of wrongdoing, we set it out in full.

"Fourteenth interrogatory: Directing your attention to the enclosed photostatic copy of a check dated 9 January 1951, marked in red in the lower right hand corners of the face and back thereof the words 'Exhibit A' and the initials 'RWN' and ask you to place your own initials and the date on the face and back of the document in your own handwriting. What initials and what date have you placed upon the Exhibit?

"Answer: GFS, 9 April 1952.

"Fifteenth interrogatory: Have you ever seen the original check, of which the enclosed Exhibit A is a photostatic copy? If so, when and under what circumstances did you see the original check?

"Answer: No.

"Sixteenth interrogatory: Does your personal signature, in your own handwriting, appear anywhere upon the document, on either its face or back?

"Answer: No.

"Seventeenth interrogatory: Did you endorse the original check of which the enclosed Exhibit A is a photostatic copy? If not, do you know who did?

"Answer: No. I don't know who did.

"Eighteenth interrogatory: Who, if anyone, did you authorize to endorse the original check for you?

"Answer: No one.

"Nineteenth interrogatory: Who, if anyone, did you authorize to obtain the proceeds from the original check?

"Answer: No one.

**33ʙ**

"Twentieth interrogatory: How much, if any, of the proceeds from the check have you received? If you have received any of the proceeds from the check, when and under what circumstances did you receive same?

"Answer: I have not received any of the proceeds of the original check shown as Exhibit A. However, on 14 March 1951, I filed a second claim for this bonus, as a result of which a check in the amount of $480.00 was issued payable to me which I received on or about 9 June 1951."

At the trial, the prosecution offered into evidence the whole of the deposition, including the exhibit of the photostat of the check. Defense counsel made no objection to the testimonial part but interposed strong objection to the admission of Exhibit A. As already noted, this exhibit was an alleged photostatic copy of what purported to be a check issued by the Commonwealth of Pennsylvania to the order of Stiles, as payee, and signed by Charles R. Barber, State Treasurer, which check was set out in the specifications of the charge. The grounds for objection which are pertinent to this appeal were (1) that the photostat was not the best evidence of the check, and that there was no showing that the original was unavailable, and (2) there was no authentication of the check. These objections were overruled by the law officer, and the exhibit was admitted into evidence with the deposition.

Apart from the deposition, the Government's case consisted of a pretrial confession made by the accused to a CID agent. In his confession, admitted into evidence over objection, and after testimony as to its involuntary procurement, the accused made seriously inculpating statements. He admitted that in February 1951, while he was working in the Office of Supplies of the 33d Ordnance Depot, APO 757, he found a check, in an unrecalled amount. Two weeks later he endorsed the check in the name of George F. Stiles, the payee, and cashed it at the American Express Company office in Frankfurt. He further stated that it was a veteran's bonus check from the State of Pennsylvania. The money realized from the check was used by accused for his personal needs.

The defense was principally directed to showing that accused had occupied positions of trust; in those positions he had access to money and other articles of value, and no losses or shortages were ever charged to him. Additionally, the defense testimony concerned itself with the accused's good reputation for honesty and veracity. The accused testified in his own behalf. He acknowledged his friendship with Stiles, but denied that he ever stole a check belonging to Stiles or that he forged Stiles name to any check.

At the outset, it is apparent that without the evidence supplied by the check there is an insufficient showing of the commission of the alleged offenses to justify the admission into evidence of accused's confession. Without such showing, the confession itself will not support the findings of guilty. United States v. Uchihara, 1 USCMA 123, 2 CMR 29, decided February 4, 1952.

Admissibility of evidence contained in a deposition is governed by the same rules which apply at the trial. Manual for Courts-Martial, United States, 1951, paragraph 145a, page 270. Hence, proof of the contents of a writing in testimony by deposition, must conform to the same requirements for the proof of such writing at the trial. With certain exceptions a writing must be authenticated by competent proof that it is genuine, and, therefore, must be produced before it can be admitted into evidence. United States v. Jewson, 1 USCMA 652, 5 CMR 80, decided August 29, 1952. Manual for Courts-Martial, United States, 1951, paragraph 143, pages 257–264; Wigmore, Evidence, 3d ed., § 2130; 20 American Jurisprudence, Evidence, § 922, page 776, et seq. Trial counsel neither presented any independent evidence nor offered any other type of proof that the photostatic copy of the alleged check was, in fact, what it purported to be. Consequently, the exhibit

should have been excluded unless it established its own authenticity, or unless there was a waiver of that requirement.

Wigmore notes that in everyday life authenticity is often assumed on the contents of a writing alone. But the possibility of fraud, and the existence of other opportunities of easy proof of genuineness, require a different general rule in the law. Wigmore, Evidence, 3d ed, § 2148, page 606.

". . . It is true that, in the vast majority of transactions in everyday life, persons do act upon just such evidence of authenticity and no more; and it might be supposed that the law could well follow this practice. But, in the first place, it is also true that frauds are constantly perpetrated in this very manner (as in obtaining goods by forging the name and letter-heads of reputable merchants) ; and, secondly, there is little necessity for relying upon such evidence, in view of the ample opportunities of proof afforded by witnesses to handwriting.

"Accordingly, it seems generally conceded that the mere *contents of a written communication,* purporting to be a particular person's, are of themselves not sufficient evidence of genuineness. Only in special circumstances, where the contents reveal a *knowledge* or other trait peculiarly referable to a single person, could the contents alone suffice."

No special circumstances demanding departure from the general rule were shown in this case. On the contrary, there was ample opportunity to establish the genuineness of the check by independent testimony from the drawer or other competent sources. So the contents of the check alone could hardly establish authenticity. Cf. Lundgren v. Union Indemnity, 171 Minn 122, 213 NW 553.

*Prima facie* authenticity of a written instrument may be spelled out from the fact that it contains an official seal or signature. Wigmore, Evidence, 3d ed, § 2161, *et seq,* page 663, *et seq;* 20 American Jurisprudence, Evidence,

§ 65, page 87, § 80, pages 100–101. Since there is no seal on this document, we limit our consideration to the effect of the presence of an official signature. No doubt, genuineness of instruments bearing certain official signatures are sufficiently established by production of the instruments at the trial. Thus, in Estes v. United States, 225 F 980 (CA 8th Cir) (1915), it was held that a land patent bearing the signature of the President of the United States was admissible into evidence on the mere production of the patent. Although doubtful, it may well be that a Federal court, and, therefore, a court-martial, may presume the genuineness of an instrument from the physical signature of any and all Federal officers. Cf. Hagen v. Porter, 156 F2d 362 (CA 9th Cir) (1946), cert den 329 US 729, and Petition of Mundorff, 8 FRD 7 (1948). However, we are not here concerned with a Federal officer, but with an official of one of the states of the United States.

For our purposes, we may assume that Mr. Barber was, in fact, the State Treasurer of the Commonwealth of Pennsylvania at the time of issuance of the check. Springfield v. Carter, 175 F2d 914 (CA8th Cir) (1949). But we must still inquire whether the check bearing his signature, as Treasurer, may be presumed to be genuine on the mere production of the instrument. We think that no presumption of genuineness attaches to his signature.

In County of Apache v. Barth, 177 US 538, 44 L ed 878, 20 S Ct 718, the United States Supreme Court had before it the admissibility of a county warrant for payment of a county debt. The court there said (pages 544–545) :

"It is stated that it has been held by the courts generally that county and state warrants signed by the proper officers, are prima facie binding and legal; that those officers will be presumed to have done their duty, and that such warrants make a prima facie cause of action, and that impeachment must come from the defendant. I Dillon's Municipal Corporations, 3d ed sec 502. This may very well be in regard to those war-

**333**

rants when, as above stated, they have been, in fact, signed by the proper officers, and very probably the presumption may then be made that those officers who are proved to have signed the warrants have done their duty; but we are aware of no cases where it has been held, in the absence of a statute to that effect, that the mere production of a paper upon which is written or printed an obligation of a county, bearing certain names thereon, can be put in evidence without the slightest proof that the signatures on the paper were those of the persons they purport to be. No such case has been called to our attention, and we think there is no principle upon which such a holding could stand."

The statutory omission noted in the Barth case has probably been supplied for civil actions in the Federal courts today by Rule 43 (a), Federal Rules of Civil Procedure. That rule provides as follows:

"Rule 43. Evidence. — (a) Form and Admissibility. . . . All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. . . ."

Under the authority of Rule 43 (a), the Court of Appeals for the Ninth Circuit presumed the genuineness of the signature of the Federal Price Administrator, Office of Price Administration, partly on the basis of a California statute permitting judicial notice of official signatures.

". . . [T]he official signature of a federal officer may properly be presumed genuine. 7 Wigmore on

Evidence, § 2167, 3d Ed; Wynne v. United States, 217 US 234, 30 S Ct 447, 54 L ed 748. Moreover, under Rule 43 (a), Federal Rules of Civil Procedure, 28 USCA following section 723c, the United States courts in California may follow Section 1875 of the California Code of Civil Procedure and take judicial notice of '. . . The official signatures . . . of the principal officers of government in the legislative, executive, and judicial departments of this state and of the United States'. Code of Civil Procedure, Deering, 1941, § 1875. . . .'" [Hagen v. Porter, 156 F2d 362, 365 (CA9th Cir) (1946).]

However, no comparable authority for such judicial notice exists in the trial of Federal criminal cases. On the contrary, the pertinent note of the Advisory Committee on the Federal Rules of Criminal Procedure strongly suggests that a like practice of recourse to a state statute for rules of evidence is not to be sanctioned. Rule 26, Federal Rules of Criminal Procedure provides for the admissibility of evidence in a Federal criminal trial. The applicable portion of the Advisory Committee note thereto is as follows:

"Rule 26. Evidence.
"1. This rule contemplates the development of a uniform body of rules of evidence to be applicable in trials of criminal cases in the Federal courts. It is based on Funk v. United States, 290 US 371, and Wolfle v. United States, 291 US 7, which indicated that in the absence of statute the Federal courts in criminal cases are not bound by the State law of evidence, but are guided by common law principles as interpreted by the Federal courts 'in the light of reason and experience.' The rule does not fetter the applicable law of evidence to that originally existing at common law. It is contemplated that the law may be modified and adjusted from time to time by judicial decisions. See Homer Cummings, 29 A. B. A. Jour. 665; Vanderbilt, 29 A. B. A. Jour. 377; Holtzoff, 12 Geo. Wash. L. R. 119, 131–132; Holtzoff, 3 F. R. D.

445, 453; Howard, 51 Yale L. R. Jour. 763; Medalie, 4 Lawyers Guild R. (3) 1, 5–6.

"2. This rule differs from the corresponding rule for civil cases (Federal Rules of Civil Procedure, Rule 43 (a)), in that this rule contemplates a uniform body of rules of evidence to govern in criminal trials in the Federal courts, while the rule for civil cases prescribes partial conformity to State law and, therefore, results in a divergence as between various districts. Since in civil actions in which Federal jurisdiction is based on diversity of citizenship, the State substantive law governs the rights of the parties, uniformity of rules of evidence among different districts does not appear necessary. On the other hand, since all Federal crimes are statutory and all criminal prosecutions in the Federal courts are based on acts of Congress, uniform rules of evidence appear desirable if not essential in criminal cases, as otherwise the same facts under differing rules of evidence may lead to a conviction in one district and to an acquittal in another." [Notes to the Rules of Criminal Procedure for the District Courts of the United States prepared by the Advisory Committee on Rules of Criminal Procedure, pages 23–24 (1945), Rule 26.]

We think the above rule is sound and should apply in trials under the Uniform Code of Military Justice. Article 36, Uniform Code of Military Justice, 50 USC § 611. On that basis, we hold that a court-martial cannot look to the local law of a state for judicial notice or the presumption of genuineness of the signature of a state official. If it were otherwise, different results would obtain in different courts-martial. Thus, if the check in issue had been signed by a state treasurer in a state which had a statute like that involved in Hagen v. Porter, *supra*, genuineness would be presumed, and the check would properly be in evidence; if, however, the state had no such statute, the check would be inadmissible in the absence of independent proof of authenticity, and the Government's case would fail.

Eliminating local Pennsylvania law as a possible basis for the conclusion of authenticity of the signature of the State Treasurer, is there then any warrant for a presumption of genuineness in Federal law, or in the Manual for Courts-Martial, United States, 1951? As for the former, we have been referred to no statutes or cases supporting such presumption. Instead, the language in County of Apache v. Barth, *supra*, points to an opposite conclusion. As for the latter, we find that judicial notice may be taken of the seals of public offices and officers of the several states of the United States (Manual for Courts-Martial, United States, 1951, paragraph 147a, pages 273–274); but authority to notice the signature of such officers extends only to their authentication of official records of the state (Manual for Courts-Martial, United States, 1951, paragraph 143b, pages 263–264). We do not regard the check here as an official record of the Commonwealth of Pennsylvania and the signature of Mr. Barber as a certificate of authentication. Consequently, we must hold that the purported signature of the State Treasurer alone cannot impart genuineness to the check.

The Government urges that sufficient evidence of authenticity exists in the fact that the check was a reply to the payee's application for a veteran's bonus. It bases its argument upon the principle that the arrival of a reply, in due course, purporting to be from the addressee of a prior communication, which had been duly addressed and forwarded, is sufficient evidence of the genuineness of the reply to justify its admission into evidence. Manual for Courts-Martial, United States, 1951, paragraph 143b, page 260. Marcette's Estate v. Clay, 170 Kan 189, 224 P2d 998 (1950). We recognize the rule but consider it inapposite. Even if we pass over the fact that application for the bonus was made in February 1950, while the check is dated January 9, 1951, and consider the check as being in "due course" by taking judicial

**335**

notice that a Government moves slowly (Fleming v. Tidewater Optical, 35 F Supp 1015), there is no showing that the check was received by anyone, much less the addressee. For that matter, it does not appear, except in the accused's confession, that the check was ever mailed. Hence, under the circumstances of this case, the principle of genuineness of reply has little or no support.

Left for determination is whether there was any waiver of the requirement of authentication. ■■■■■■■■ Authentication may be waived by a failure to object at the proper time. Manual for Courts-Martial, United States, 1951, paragraph 143b, page 260. A photostatic copy of the alleged check was used as an exhibit in connection with the taking of the deposition of the alleged payee. No objection was made at the time of the preparation of the interrogatories to the contemplated use of the photostat. The narrow question, therefore, is whether failure to object then constituted a waiver of the requirement of authentication at the trial.

Assuming, without deciding, that failure to object to use of a photostat, instead of the original, amounted to a waiver of the best evidence rule, it would not also constitute a waiver of an affirmative showing that the check was, in fact, what it purported to be.

An agreement to the use of a copy does not waive the requirement of authentication. In Re Thomasson's Estate, 347 Mo 748, 148 SW2d 757. True, a failure to object to defects and irregularities in the taking of a deposition would constitute a waiver of such defects and irregularities. Doane v. Glenn, 88 US 33, 22 L ed 476; York Manufg. Co. v. Ill. Cent. R. R. Co., 70 US 107, 18 L ed 170. But waiver extends only to such defects as may have been obviated by a retaking of the deposition. Doane v. Glenn, supra; Thompson v. Thompson, 164 F2d 705 (CA DC Cir) (1947).

A retaking of the deposition of the payee in this case could add nothing whatsoever to the question of authenticity of the check. The payee never saw the check and could not have provided any proof of genuineness on the basis of the interrogatories presented to him. Consequently, the withholding of objection to the photostat on the ground of lack of authentication could not have resulted in the sacrifice of any substantial right by the Government. No waiver of authentication, therefore, stemmed from defense counsel's failure to object to the use of a photostat on the taking of the deposition.

Accordingly, the decision of the board of review is reversed and a rehearing is ordered.

Judges LATIMER and BROSMAN concur.