No. 42,415

In re Estate of J. G. N. Soanes, Deceased. Mrs. L. L. Scott, *Appellee*, v. Myles C. Stevens as Executor of Estate of J. G. N. Soanes, *Appellant*.

(368 P. 2d 4)

Opinion filed January 20, 1962.

*Myles C. Stevens*, of Kansas City, argued the cause, and *Elmer C. Jackson, Jr.*, of Kansas City, was with him on the briefs for the appellant.

*Robert D. Loughbom*, of Kansas City, argued the cause, and *Donald E. Martin*, of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: Mrs. L. L. Scott, plaintiff (appellee), instituted this action against the executor of Dr. J. G. N. Soanes' estate, defendant (appellant), to recover for personal services rendered by her to Dr. Soanes during his last illness. The money judgment was sought on a *quantum meruit* basis for services performed as a practical nurse and housekeeper. Issues were joined in the district court and the case was tried before a jury. From a verdict and judgment in favor of the plaintiff, defendant executor appeals.

A summary of the evidence follows. Dr. Soanes practiced medicine in Kansas City for over fifty years. At the time of his death he was ninety-three years of age, a widower, his wife having preceded him in death by fifteen years, and childless. Plaintiff worked for the deceased in his office about ten or twelve years prior to the period in question. The plaintiff testified that during the aforementioned years she received ten dollars a day. The evidence discloses that when the doctor's last illness occurred in October, 1958, Mrs. Scott, who was not a relative of Dr. Soanes, went into his home to look after and care for him and his house. These services were rendered by plaintiff on an around-the-clock basis every day until the time of the doctor's death. It was stipulated between plaintiff and defendant that plaintiff was an employee of Dr. Soanes

from October 7, 1958, to November 5, 1959, a period of fifty-six weeks, and that plaintiff received from Dr. Soanes fifty-three payments of $10.50 each.

The record further discloses, with regard to the nursing care, that Mrs. Scott prepared the doctor's meals, fed him, gave him his prescribed medications, bathed and shaved him every day, gave him alcohol rubs, and changed the linens on his bed several times each day. She also dressed and undressed him, cut his hair, and at times helped him out of and into bed, and, in general, performed all the necessary services of a practical nurse and housekeeper. When asked how much she expected to receive per day for the services rendered to Dr. Soanes, Mrs. Scott replied ten dollars a day and a dollar a day food allowance. During the thirteen months in question she received partial payment for her services, $10.50 a week, but she did not expect that to be in full payment for the services rendered.

Edward Hill, a witness for the plaintiff, testified with regard to the excellent care rendered to the doctor by the plaintiff as he observed it on his frequent visits to Dr. Soanes. He testified further that Dr. Soanes told him that Mrs. Scott would be "well taken care of."

Sallie Bowie testified on plaintiff's behalf to the detailed, faithful care plaintiff rendered to the doctor and the excellent care she took of his home, and further related that in the summer of 1959 Dr. Soanes told the witness he wasn't paying Mrs. Scott full salary because he planned on her having the house. On cross-examination Mrs. Bowie testified: "Q. And you said Dr. Soanes told you he was partially paying Mrs. Scott? A. Yes, he said he wasn't paying her full salary."

On cross-examination Mrs. Scott testified she is presently employed by and taking care of a Sadie Johnson, and for this service she receives ten dollars a day.

Defendant first contends that plaintiff, by accepting regular weekly payments during the period of her services, raises a presumption that each payment was in full settlement of all claims arising out of such relations up to the date of such payments and may not recover on a *quantum meruit* basis for such services. As a general rule, presumptions with respect to payment are merely presumptions of fact. While they are controlling in the absence of evidence to the contrary, they are rebuttable by evidence showing

that the actual fact is otherwise than as would be presumed in the absence of opposing evidence; and where a presumption is overcome by evidence, it is inoperative. (70 C. J. S., Payment, § 110.) In the instant case there is no evidence of a contract for plaintiff's services at the rate of $10.50 a week other than the mentioned presumption. On the contrary, the record discloses that Dr. Soanes told one of plaintiff's witnesses that he was not paying plaintiff her full salary and told another witness that Mrs. Scott would be well taken care of. In addition, plaintiff testified she expected to receive ten dollars a day plus a dollar a day for food, and that prior to the doctor's last illness she received for her services in assisting him in his office the sum of ten dollars a day. In view of the mentioned testimony, and record, we are of the opinion that plaintiff's evidence sufficiently rebutted the afore-mentioned presumption and made a *prima facie* case for recovery for her services on a *quantum meruit* basis.

Defendant next contends that plaintiff was incompetent to testify to transactions between her and the decedent with respect to the nature of the services rendered by her in deceased's last illness. We find little merit to this contention. Defendant, having stipulated that plaintiff was employed by Dr. Soanes during the fifty-six-week period in question, thereby established the fact that the services were performed and that there was some kind of an agreement. In so doing, the defendant opened the door for the plaintiff to introduce evidence and to testify as to the nature of her work. (*Poole v. Poole,* 96 Kan. 84, 93, 150 Pac. 592; *Bank v. Abbott,* 104 Kan. 344, 347, 179 Pac. 326.) Even if some of the testimony of Mrs. Scott on this issue might be treated as close to the line of incompetency, under the circumstances it should not be regarded as material error. (*Lee v. Downing,* 113 Kan. 329, 214 Pac. 786.) Moreover, the witnesses Hill and Bowie testified in detail as to the work and services performed by the plaintiff, and there was, in fact, no contradictory nor conflicting testimony with respect to the work done by her. The error, if any, in the admission of the testimony was not material. (*Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; *In re Estate of Marcotte,* 170 Kan. 189, 193, 224 P. 2d 998.)

It is also assigned as error that the trial court permitted the plaintiff to testify that she expected to be paid ten dollars a day for the services rendered. Her intention was a material matter in the case. If she had no intention of receiving more than the $10.50 a

week, she could not have recovered. The objection to her testimony in this regard runs rather to its credibility than to its competency. The evidence was properly admitted. (*Story v. McCormick*, 70 Kan. 323, 330, 78 Pac. 819; *In re Estate of Woodford*, 171 Kan. 265, 270, 232 P. 2d 456.)

After a careful review of the record we are unable to find where the defendant has made it affirmatively appear that the trial court erred in any of the particulars complained of. The defendant admitted the rendition of the services by the plaintiff; that there was an implied contract between plaintiff and the decedent to pay the reasonable value for such services is a fair deduction from the evidence and circumstances appearing in the case; the evidence to support plaintiff's claim was sufficient and the circumstances themselves were potent corroborative evidence of a contract. With all of this evidence before us we must conclude that the judgment of the trial court should be and it is affirmed.

It is so ordered.